# EXHIBIT "A"

633038.1

Cause No. 20-002597-CV-85
*Vanessa Garrett Jackson, Plaintiff*
*v.*
*EK Real Estate Services of NY, LLC, an affiliate of Easyknock, Inc. and*
*Lending One, LLC Defendants*
In the 85th Judicial District Court, Brazos County, Texas

## INDEX OF STATE COURT FILE DOCUMENTS

1.   Court Docket Sheet

2.   Original Petition, Emergency Motion to Stay Eviction Proceeding
     and Request for Disclosures ..................................................................... 10/7/2020

3.   Civil Case Info Sheet ............................................................................. 10/7/2020

4.   Issuance of Process – Lending One ........................................................ 10/7/2020

5.   Issuance of Process – EK Real Estate of NY, LLC ................................. 10/7/2020

6.   Citation Issued to EK Real Estate of NY, LLC ...................................... 10/8/2020

7.   Defendant (EK Real Estate) Original Answer and Affirmative Defenses.............. 11/5/2020

8.   Defendant LendngOne, LLC's Original Answer................................................. 11/13/2020

633038.1

## Case Information

## Vanessa Garrett Jackson vs. EK Real Estate Services of NY, LLC, and affiliate of EasyKnock, Inc. and Lending One, LLC

20-002597-CV-85

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Brazos County - District Clerk | Civil - Other Civil | Other Civil | 10/7/2020 |

| Judge | | | |
|---|---|---|---|
| Hawthorne, Kyle | | | |

## Parties ③

| Type | Name | Attorneys |
|---|---|---|
| Plaintiff | Vanessa Garrett Jackson | Robin M. Ziek, STEPHEN D. JACKSON |
| Defendant | EK Real Estate Services of NY, LLC | Matthew A. Knox |
| Defendant | LendingOne, LLC | Andrew C. Wright |

## Filings ⑥

| Date | Filing Type | Filing Description | Documents |
|---|---|---|---|
| 10/7/2020 | Other | Civil Case Info Sheet | Civil Case Info Sheet.pdf |
| 10/7/2020 | Issue Process Instructions | Issuance of Process - LendingOne | Issuance of Process - LendingOne.pdf |
| 10/7/2020 | Issue Process Instructions | Issuance of Process - EK Real Estate | Issuance of Process - EK Real Estate.pdf |
| 10/7/2020 | Petition | Original Petition, Emergency Motion to Stay Eviction Proxeeding and Request for Disclosure | |
| 11/5/2020 | Answer/Response/Waiver | DEFENDANT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES | Defendant's Original Answer & Affirmative Defenses.pdf |
| 11/13/2020 | Answer/Response/Waiver | Defendant's Original Answer | 2020.11.13 Defendant's Original Answer.pdf |

© 2020 Tyler Technologies, Inc. | All Rights Reserved
Version: 2020.10.0.3123


EMPOWERED BY
TYLER TECHNOLOGIES

Help

Received & Filed 10/7/2020 4:05 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Samantha McQueen
Envelope# - 46980828

20-002597-CV-85

CAUSE NO. _____

| | | |
|---|---|---|
| **VANESSA GARRETT JACKSON** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **V.** | § | **BRAZOS COUNTY, T E X A S** |
| | § | |
| **EK REAL ESTATE SERVICES OF** | § | |
| **NY, LLC.  an affiliate of** | § | |
| **EASYKNOCK, INC. and** | § | |
| **LENDING ONE, LLC** | § | **_____ JUDICIAL DISTRICT** |

## ORIGINAL PETITION, EMERGENCY MOTION TO STAY EVICTION PROCEEDING AND REQUEST FOR DISCLOSURES

NOW COMES, **VANESSA GARRETT JACKSON ("JACKSON")**, Plaintiff and files this her *Original Petition* to void a Deed purporting to transfer her homestead and the real property recorded in the Office of the Clerk of Brazos County, Texas, an *Emergency Motion to Stay the Eviction Proceeding* and for other causes of action against Defendants, **EK REAL ESTATE SERVICES, OF NY, LLC**, an Affiliate of **EASYKNOCK, INC** and **LENDINGONE, LLC**. and in support thereof would show the Court as follows:

### PARTIES

1.     **VANESSA GARRETT JACKSON ("JACKSON")**, Plaintiff herein is a resident of Brazos County, Texas and is the person or owner of the real property sought to be quieted in this suit together with damages arising therefrom.

2.     **EK REAL ESTATE SERVICES OF NY, LLC** an Affiliate of **EASYKNOCK, INC.**, Defendant is a foreign limited liability company organized and existing under the laws of the State of Delaware but authorized to do business in the State of Texas and whose principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, which may be served with a copy of this *Original Petition, Emergency Motion to Stay Eviction Proceedings and Request for Disclosures* through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas  78701.

3.     **LENDINGONE, LLC ("LENDINGONE")** is a foreign limited liability company organized and existing under the laws of the State of Florida but is authorized to do business in the

1

State of Texas and whose principal office is located at 901 Northwest 51st Street, Suite 150, Boca Raton, FL 33431, which may be served with a copy of this *Original Petition, Emergency Motion to Stay Eviction Proceedings and Request for Disclosures* by serving its registered agent for service Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Travis County, Texas 78731.

## DISCOVERY LEVEL

4.       Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff **JACKSON** elects for discovery to be conducted under Level 2.

## VENUE

5.       Venue is proper because the real property transaction which give rise to this lawsuit involve real property located in Brazos County, Texas under §12.004 of the Texas Civil Practice and Remedies Code.   Venue for this suit also under the Texas Deceptive Trade Practices Act (DTPA) is proper in Brazos County, Texas under the Texas Business & Commerce Code, Section 17.56.

## JURISDICTION

6.       This Court has jurisdiction over this suit as this suit seeks damages within the jurisdictional limits of the Court and monetary relief of over $200,000.00 but not more than $1,000,000.00 as well as non-monetary relief.

## FACTS

7.       In or about April 2002, Plaintiff, **JACKSON's** parents built a house for her and her children , which is located at 4008 Settler's Way, Bryan, Brazos County, Texas and is more fully described as  Lot Five (5), Block One (1), Austin Colony Phase 5A, City of Bryan, according to plat thereof recorded in Volume 3726, Page 25 of the Official Records of Brazos County, Texas ("the Property"). **JACKSON** has resided at the Property continuously for that period of time and the Property is **JACKSON's** homestead.  The Property was part of land belonging to **JACKSON's** parents. In 2017, **JACKSON's** last remaining parent, **DONALD D. GARRETT** died.  As part of the probate of her father's estate, **JACKSON** was deeded the Property.  *(See Exhibit "A" – Special Warranty Deed to JACKSON from the Estate attached hereto and incorporated herein for all purposes.)*  At the time of the transfer, the Property was free and clear of all encumbrances.

8.       In the Fall of 2018, **JACKSON** fell upon difficult financial times.  At the time, **JACKSON** was unable to borrow money from a conventional financial institution because of bad

2

credit, the loss of her job and the Property being her homestead. **JACKSON** found a alternative lender on the internet (Defendant **EK REAL ESTATE**) which asserted to **JACKSON** that it would loan her the money in exchange for a Deed to the Property and the execution of a lease agreement with an option to repurchase the Property. Based upon Defendant's assurances that she could repay the "loan" and gain back the Property, which was her homestead, **JACKSON** who had no other options, agreed to the terms. Such transaction is known as a "Sale-Leaseback" which are highly disfavored in Texas. Neither Defendants, **LENDINGONE** or **EK REAL ESTATE** are qualified lenders in Texas with the Texas Office of Consumer Credit Commission (OCCC).

9.    On November 29, 2018, **JACKSON**[1] deeded to Defendant, **EK REAL ESTATE** the Property. *(See Exhibit "B" – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)* The Warranty Deed contained a Vendor's Lien in favor of Defendant, **LENDINGONE** who apparently had loaned to **EK REAL ESTATE** the sum of $70,000.00 to make the alleged purchase of the Property. Defendant, **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant, **LENDINGONE**. **JACKSON** then entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "C" – Lease with Tenant Option Agreement which is attached hereto and incorporated herein for all purposes.)* Such Lease was for an initial period of twelve (12) months at a rental rate of $15,480.00 per year commencing with the first payment of $1,290.00 per month being due and payable on January 1, 2019[2]. During the thirty-six-month Lease, if certain conditions were met, **JACKSON** could repurchase the Property for a payment of $69,648.00 plus all closing costs paid by Defendant, **EK REAL ESTATE**, all rents and any Additional Rent due Defendant, **EK REAL ESTATE**. **JACKSON** was responsible for all repairs and maintenance on the Property. If Defendant, **EK REAL ESTATE** paid for any repairs or maintenance, **JACKSON** as the Tenant was responsible for reimbursement to Defendant, **EK REAL ESTATE** as "Additional Rent". The base rent escalated in years 2 and 3

---

[1] EK REAL ESTATE required ROBERT E. LEE who was JACKSON's roommate at the time to execute all the documents as if he owned an interest in the real property; however, JACKSON and ROBERT E. LEE have never been married nor was ROBERT E. LEE a beneficiary under the Special Warranty Deed received by JACKSON from her father's estate. The sole purpose for ROBERT E. LEE being on the Deed to EK REAL ESTATE was ROBERT E. LEE was a disabled veteran and EK REAL ESTATE required his disability income in order to "qualify" JACKSON for the transaction.
[2] The HUD statement (Ex. D) shows that JACKSON paid the initial rent from Nov. 30, 2018 through Dec. 31, 2018 from the "loan" proceeds to EK REAL ESTATE.

3

of the Lease.  The monthly rent charged by Defendants to **JACKSON** exceeded the rental rates in Bryan/College Station for similar properties.

10.     It further does not appear that Defendants asked for nor received a waiver of homestead from **JACKSON** in the "Sale-Leaseback" transaction.

11.     Defendant, **EK REAL ESTATE** had the Property appraised at $200,000.00.  At the closing, **JACKSON** received "net sales proceeds" of $50,059.79 out of the alleged sales price of $200,000.00. No encumbrances were assumed or paid off as a result of this "sale".  In addition to outrageous closing costs burdened upon **JACKSON** by Defendants, on the Settlement Statement, Defendant, **EK REAL ESTATE** deducted a charge of $133,668.00 as "Tenant Lease Option".  *(See Exhibit "D" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)* In essence, Defendants stole **JACKSON's** property worth $200,000.00 for a payment of $50,069.79 and strapped **JACKSON** to rental payments of $15,480.00 for the first twelve months of the lease and escalated over the next 2-year period. **JACKSON** would have the opportunity to "purchase' the Property back for the sum of $69,648.00 plus Defendant, **EK REAL ESTATE's** closing costs and any Rents that were due during the first year, with escalating purchase prices during years 2 and 3.

12.     By December 2019, **JACKSON** fell behind on the rental payments due Defendant, **EK REAL ESTATE**.  Although **JACKSON** paid what she could to Defendants, she could not afford the entire rent payment on a monthly basis, a fact that was known to the lenders at the time the money was loaned to **JACKSON** and this transaction was entered into between the parties.

13.     In March 2020, the COVID-19 pandemic hit the United States, shutting down work in Texas and increasing the financial hardship on most Americans, including Plaintiff, **JACKSON**.

14.     On July 20, 2020, **JACKSON** received notification from Defendant, **EK REAL ESTATE** that unless she cured the past due rent of $9,443.50, she would be evicted from the Property.  **JACKSON** was in no position to cure the past due rents.  *(See Exhibit "E" – Demand Letter dated July 20, 2020 to JACKSON which is attached hereto and incorporated herein for all purposes.)* Contained in the Demand Letter was a "warning" which stated as follows:

> "YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT **TO BUY YOUR PROPERTY (emphasis added)**.   UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE THIRTY (30) DAYS FROM July 25, 2020, THE LANDLORD HAS THE RIGHT TO TAKE POSSESSION OF YOUR PROPERTY."

4

Clearly, Defendant, **EK REAL ESTATE**, knew that the transaction which made the basis of this suit was a "loan" and not a "sales-leaseback".

15.     Without any ability to pay the past due amounts, on September 30, 2020, Defendant, **EK REAL ESTATE**, filed a forcible entry and detainer cause of action in the Justice Court in Brazos County, Texas seeking possession of the Property from **JACKSON**.

16.     **JACKSON** has filed an Answer and a Plea to the Jurisdiction simultaneously with the filing of this action as she seeks to litigate the title to the Property in this Court. **JACKSON** is also filing a Motion to Stay the eviction proceedings until title to the Property has been adjudicated.

## EMERGENCY MOTION FOR STAY

17.     Plaintiff, **JACKSON** requests that this Court enter an emergency stay order prohibiting Defendants', **EK REAL ESTATE** and **LENDINGONE** from trying to evict Plaintiff, **JACKSON** from the Property until such time as title to the Property has been determined by this Court.

## SUIT TO QUIET TITLE TO THE PROPERTY

18.     Plaintiff, **JACKSON** adopts all preceding paragraphs as if recited verbatim herein.

19.     Plaintiff, **JACKSON** was the fee simple owner of the Property which was her homestead prior to the sale-leaseback transaction made the subject of this suit. Section 41.006 of the Texas Property Code, states as follows:

> (a) "Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

> (b) The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale...".

Although, Defendant, **EK REAL ESTATE** claimed that it was purchasing **JACKSON's** property for $200,000.00 **JACKSON** only received the sum of $50,069.79 from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that

exceeded similar properties in Bryan, Texas.  As a result, Plaintiff, **JACKSON** has filed this suit to quiet title to the Property asking this Court to void  the *General Warranty Deed with Vendor's Lien* given to Defendant, **EK REAL ESTATE** as an impermissible transaction under §41.006 of the Texas Property Code and requesting the Court find that Defendants, **EK REAL ESTATE** and **LENDINGONE** have no interest, legal, equitable or otherwise to her Property and that Plaintiff, **JACKSON** is the rightful owner of the Property.

## DECLARATORY JUDGMENT

20.     Plaintiff, **JACKSON** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.  Plaintiff seeks the following declarations:

(a)     That Defendants, **EK REAL ESTATE** and **LENDINGONE** have no rights, title or ownership interest in the Property; and

(b)     That the *General Warranty Deed with Vendor's Lien* executed by **JACKSON** on November 29, 2018 is void as a matter of law;

(c)     That the *Deed of Trust* given by Defendant, **EK REAL ESTATE** to Defendant, **LENDINGONE** is void; and

(d)     That **JACKSON** is the rightful owner of the Property.

Plaintiff has retained the law firms of Robin M. Ziek and Stephen D. Jackson & Associates to represent her in this action and has agreed to pay the foregoing attorneys their reasonable and necessary attorneys' fees.  An award of reasonable and necessary attorneys' fee to Plaintiff would be equitable and just and, therefore, authorized by §37.009 of the Tex. Civ Prac. & Rem. Code.

## TEXAS DECEPTIVE TRADE PRACTICES

21.     Plaintiff, **JACKSON** adopts all preceding paragraphs as if recited verbatim herein.

22.     Plaintiff is a consumer under the DTPA because Plaintiff is an individual who sought goods or services by purchase/lease.

23.     Defendants, **EK REAL ESTATE** and **LENDINGONE** violated the DTPA when Defendants engaged in false, misleading or deceptive acts that Plaintiff relied on to Plaintiff's detriment.  Specifically, Defendants violated the DTPA, among others, as follows:

a.  Representing that an agreement confers or involves rights, remedies or obligations that it does not or that are prohibited by law.

b.  Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

6

        c.  Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

24.    Defendants, **EK REAL ESTATE** and **LENDINGONE** violated the DTPA when Defendants engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree. Specifically, Defendants, **EK REAL ESTATE** and **LENDINGONE** induced Plaintiff, **JACKSON** into entering into a "loan" transaction which was prohibited by law concerning her homestead knowing that neither Defendant was qualified as lenders with the Texas Office of Consumer Credit Commission to lend against Plaintiff, **JACKSON's** homestead. Defendants, **EK REAL ESTATE** and **LENDINGONE** knew or should have known that **JACKSON** had the inability to pay back the onerous lending terms on rates and at charges that exceeded the maximum rates allowed by law.

25.    Defendants, **EK REAL ESTATE** and **LENDINGONE** violated the DTPA when Defendants engaged in false, misleading or deceptive acts or practices that Plaintiff relied upon to Plaintiff's detriment and that violated a "tie-in" consumer statute, specifically §41.006 of the Texas Property Code when Defendants induced Plaintiff, **JACKSON** into entering into a "Sale-leaseback" transaction on her homestead.

26.    It was impracticable for Plaintiff, **JACKSON** to give Defendants written notice under the Texas Business & Commerce, §17.505(a) because Plaintiff needed to file this suit to stop an eviction proceeding which was filed against her and being heard on October 15, 2020. Therefore, written notice was not required.

27.    Defendants' wrongful conduct was a producing cause of Plaintiff's injuries which resulted in the following damages:

        a.  Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court;

        b.  Defendants acted knowingly and intentionally which entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code, §17.50(b)(1);

        c.  Defendants acted knowingly and intentionally which entitles Plaintiff to recover treble economic and mental anguish damages under the Texas Business & Commerce Code, §17.50(b)(1); and

       d.  Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code, §17.50(d).

<u>**USURY**</u>

28.     Plaintiff, **JACKSON** adopts all preceding paragraphs as if recited verbatim herein.

29.     On or about November 29, 2018, Defendant, **EK REAL ESTATE** loaned money to Plaintiff, **JACKSON** disguised as a "Sale-Leaseback" transaction. The loan was originally discussed to be around $70,000.00. Defendant, **EK REAL ESTATE** had the Property appraised to appear that it was a $200,000 sale to it from **JACKSON**. From a purported sale of the Property for the "contract sales price" of $200,000.00, Plaintiff only received the sum of $50,069.79. Disguised as a Tenant Lease Option on the HUD Statement, Defendant, **EK REAL ESTATE** took a $133,668.00 fee against the sales price, although Plaintiff, **JACKSON** received a 1099 for the entire $200,000.00 transaction.

30.     Plaintiff, **JACKSON** had an obligation to repay the principal amount of Defendant's loan as seen in the option to repurchase the Property.

31.     Defendant, **EK REAL ESTATE** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

       a.  Tenant Lease Option - $133,668.00;
       b.  Lease Payments of $15,480.00 in the first year;
       c.  Lease Payments of $15,687.00 in the second year;
       d.  Lease Payments of 16,263.68 in the third year;
       e.  The difference between the amount received by Plaintiff on the loan of $50,069.79 and the repayment option of $69, 648.00, if repurchased within the first twelve months, $71,389.20 if repurchased within twenty four months and $73,173.93 if repurchased within thirty six months plus closing costs and rents.

32.     Defendant's unlawful conduct caused injury to Plaintiff, **JACKSON** which resulted in the following damages:

       a.  Statutory Penalties; and

       b.  Attorney's fees.

33.     Plaintiff, **JACKSON** seeks unliquidated damages within the jurisdictional limits of this Court.

34.     Plaintiff, **JACKSON** is entitled to recover statutory penalties under Texas Finance Code, §305.001(a), that being the greater of the following:

a.   Three times the amount by which the interest contracted for, charged or received exceeds the maximum amount of interest allowed by the usury statute; or

b.   $2,000.00 or 20% of the principal, whichever is less.

In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff, **JACKSON** is seeking the forfeiture of all principal, interest and other amounts charged and received.  Tex. Fin. Code §305.002.

35.    Plaintiff, **JACKSON** is further entitled to recover reasonable attorney's fees under Texas Finance Code, §349.001.  Plaintiff has hired the undersigned attorneys to represent her interests in this matter and have agreed to pay the attorneys a reasonable rate for their services. Plaintiff, **JACKSON** seeks to recover her attorney's fees from Defendants, jointly and severally, in this matter.

## REQUEST FOR DISCLOSURES

36.    Under Texas Rule of Civil Procedure 194, Plaintiff, **JACKSON** requests that Defendants, within fifty (50) days from date of service of this request, respond to the information or material described in Rule 194.2.

## PRAYER

Plaintiff, **VANESSA GARRETT JACKSON** prays that the Court enter Judgment in favor of **VANESSA GARRETT JACKSON** as against Defendants, **EK REAL ESTATE SERVICES OF NY, LLC** an Affiliate of **EASYKNOCK, INC.** and **LENDINGONE, LLC**, jointly and severally, for the damages as set forth herein and for such other and further relief, in law or at equity to which she may be justly entitled.

Respectfully submitted,

Robin M. Ziek, Attorney at Law

By: /s/ *Robin M. Ziek*
   _____
   ROBIN M. ZIEK
   State Bar No. 22262575
   3401 Allen Parkway, Suite 101
   Houston, Texas 77019
   Tel: (713) 222-8030
   Fax: (832) 565-9011

9

Stephen D. Jackson & Associates
215 Simonton
Conroe, Texas 77301
Tel: (936) 756-5744
Fax: (936) 756-5842


By:/s/ *Stephen D. Jackson*

    Stephen D. Jackson
    State Bar No. 00784324
    steve@stevejacksonlaw.com
    Romi L. Schwartz
    State Bar No. 00788372
    romi@stevejacksonlaw.com
    **ATTORNEYS FOR VANESSA GARRETT**
    **JACKSON**

THE STATE OF TEXAS, COUNTY OF BRAZOS
I, Gabriel Garcia, Clerk of the District of Brazos County, Texas,
do hereby certify that the foregoing is a true and correct copy of
the original; this certification is other than that the SSN's have been
redacted in Cause No. 20-002597-CV-85
ATTEST: Gabriel Garcia
GABRIEL GARCIA, District Clerk, Brazos County, Texas
By: _____, Deputy

10

1319864 Page 1 of 3  01/30/2018 11:38AM Karen McQueen, Brazos County Clerk   Volume : 14475 Page : 243

[NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER]

COUNTY AND STATE: BRAZOS COUNTY, TEXAS

## SPECIAL WARRANTY DEED

**Grantor:**      **JEFFREY LEE GARRETT**, Independent Executor of the Estate of
**DONALD D. GARRETT**, Deceased
11376 Majestic Dr., Montgomery, Montgomery County, Texas 77316
Relating to Cause No. 16472-PC, in the County Court at Law No. 1,
Brazos County, Texas
Called "Grantor", whether one or more

**Grantee:**      **VANESSA GARRETT JACKSON**
4008 Settler's Way
Bryan, Brazos County, Texas 77808
As to an undivided 100% interest
Called "Grantee", whether one or more

**Conveyance:**

Pursuant to the Last Will and Testament of **DONALD D. GARRETT** admitted to Probate in the County Court at Law No. 1 of Brazos County, Texas, on September 15, 2017, under Cause Number 16472-PC, and FOR VALUE RECEIVED, Grantor, by and through his capacity as Independent Executor of the **ESTATE OF DONALD D. GARRETT**, deceased, has conveyed, transferred and assigned, and hereby grants, conveys, transfers and assigns to Grantee, all, and no less than all, of Grantor's right and interest in the following real property and the improvements located thereon and the appurtenances thereto belonging, said property being owned, immediately prior to this conveyance 100% (one hundred percent) by the **ESTATE OF DONALD D. GARRETT**, deceased, and now, upon recordation of this deed, being owned 100% (one hundred percent) by **VANESSA GARRETT JACKSON**, said property being located at:

4008 Settler's Way, Bryan, Brazos County, Texas 77808

And being more particularly described as:

Lot Five (5), Block One (1), Austin's Colony Phase 5A, City of Bryan, according to plat thereof recorded in Volume 3726, Page 25, of the Official Records of Brazos County, Texas.

**Consideration:** Ten and No/100 dollars and other valuable consideration paid to Grantor by Grantee, the receipt and sufficiency of which is hereby acknowledged.

STATE OF TEXAS
COUNTY OF BRAZOS
The foregoing is a true and correct copy as the same
appears on file and recorded in the appropriate
records of Brazos County, Texas
I hereby certify, on _1-24-18 T.D._

_Karen McQueen_
County Clerk,
Brazos County, Texas

**EXHIBIT**

**A**

1319864  Page 2 of 3  01/30/2018  11:38AM  Karen McQueen, Brazos County Clerk   Volume : 14475

**Habendum and Warranty:** To have and to hold the Subject Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto Grantee, Grantee's successors, personal representatives, and assigns forever; and Grantor does hereby bind Grantor and Grantor's successors to warrant and forever defend, all and singular, the said premises unto the Grantee and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

**Reservations from and Exceptions to Conveyance:** This deed is subject to all easements, restrictions, conditions, covenants, and other instruments of record. When the context requires, singular nouns and pronouns include the plural.

*This deed was prepared based on information provided by the Grantor, without a review or examination of the title to, or a survey of, the Property, and no opinions or representations are being made either expressly or impliedly by The LaFitte Law Firm.*

Dated and Effective this 2 nd day of January , 2018.

Signed

JEFFREY LEE GARRETT, Independent Executor of the
Estate of DONALD D. GARRETT, Deceased
Grantor

STATE OF TEXAS                          §
                                        §
COUNTY OF MONTGOMERY                     §

On this the 2 day of January , 2018, before me, a Notary Public of said State, personally appeared JEFFREY LEE GARRETT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged that JEFFREY LEE GARRETT executed the same for the purpose, in the capacity, and for the consideration therein expressed.

WITNESS MY HAND AND OFFICAL SEAL.

JOYCE  E. STEEN
NOTARY ID #128977794
My Commission Expires
May 04, 2020

Notary Public, State of Texas

AFTER RECORDING RETURN TO:
The LaFitte Law Firm
1095 Evergreen Circle, Suite 200
The Woodlands, Texas 77380

STATE OF TEXAS
COUNTY OF BRAZOS
The foregoing is a true and correct copy as the same
appears on file and recorded in the appropriate
records of Brazos, County, Texas
I hereby certify, on  1-29-18 T.D.

County Clerk,
Brazos County, Texas

1319864  Page 3 of 3  01/30/2018  11:38AM  Karen McQueen, Brazos County Clerk   Volume : 14475



**Brazos County**
**Karen McQueen**
**County Clerk**

*VG-287-2018-1319864*

Instrument Number:  1319864
Volume : 14475

Real Property Recordings

Recorded On: January 30, 2018 11:38 AM                    Number of Pages: 3

" Examined and Charged as Follows: "

Total Recording: $30.00

\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                      **Record and Return To:**
Document Number:     1319864                      LAFITTE LAW FIRM
Receipt Number:        20180130000053             1095 EVERGREEN CIRCLE  SUITE 200
Recorded Date/Time:  January 30, 2018 11:38 AM
User:                         Flo W                          THE WOODLANDS TX 77380
Station:                     mxl4151gvj



STATE OF TEXAS
COUNTY OF BRAZOS
I hereby certify that this Instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Brazos County, Texas.

Karen McQueen
County Clerk
Brazos County, TX





STATE OF TEXAS
COUNTY OF BRAZOS
The foregoing is a true and correct copy as the same
appears on file and recorded in the appropriate
records of Brazos County, Texas
I hereby certify, on  7-24-18

Karen McQueen
County Clerk
Brazos County, Texas

# GENERAL WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DATE: November 29, 2018

GRANTOR: Vanessa Garrett Jackson nka Vanessa Dawn Jackson and Robert E. Lee

GRANTEE and MAILING ADDRESS:  EK Real Estate Services of NY, LLC
79 Madison Avenue, 5th Floor
New York, NY 10016

CONSIDERATION:

$10.00 and other valuable consideration, receipt of which is hereby acknowledged, and a note of even date that is in the principal amount of SEVENTY THOUSAND and 00/100 Dollars ($70,000.00) executed by Grantee, and payable to the order of LendingOne, LLC. It is secured by a vendor's lien retained in this deed and by a deed of trust of even date from Grantee to Douglas K. Watson, II, Trustee.

PROPERTY (including any improvements):

Lot 5, Block 1, AUSTIN'S COLONY PHASE 5A, an Addition to the City of Bryan, Brazos County, Texas, according to the Map or Plat recorded in Volume 3726, Page 24, Official Records Records of Brazos County, Texas.

More commonly known as 4008 Settlers Way, Bryan TX 77808

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

This conveyance is made and accepted subject to all restrictions, covenants, conditions, rights-of-way, assessments, outstanding royalty and mineral reservations and easements, if any, affecting the above described property that are valid, existing and properly of record and subject, further, to taxes for the year 2018 and subsequent years.

GENERAL WARRANTY DEED WITH VENDOR'S LIEN                                    Page 1



Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in anywise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, successors and assigns to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

The vendor's lien against and superior title to the property are retained until the note described is fully paid according to its terms, at which time this deed shall become absolute.

LendingOne, LLC, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of LendingOne, LLC and are transferred to LendingOne, LLC without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.


Vanessa Gaffett Jackson nka Vanessa Dawn Jackson


Robert E. Lee



GENERAL WARRANTY DEED WITH VENDOR'S LIEN                                      Page 2

Acknowledgement

THE STATE OF TEXAS                             §
                                               §
COUNTY OF Brazos                               §

    This document was acknowledged before me by Vanessa Garrett Jackson nka Vanessa Dawn Jackson and Robert E. Lee on November 29, 2018.



Notary Public, State of Texas

After Recording Return To:

Law Offices of T. Alan Ceshker, PC
13413 Galleria Circle Suite 120
Austin, Texas 78738
(512) 961-7848
(512) 961-7849 (fax)

JAIR SCHOLZE
Notary Public, State of Texas
Comm. Expires 09-29-2020
Notary ID 13084136-6

GENERAL WARRANTY DEED WITH VENDOR'S LIEN                    Page 3



# LEASE WITH TENANT OPTION AGREEMENT

This Lease with Tenant Option Agreement ("Agreement") is made on ___11/30/2018___ between EK REAL ESTATE SERVICES OF NY, LLC an affiliated entity of EASYKNOCK, INC., a Delaware corporation, with an address at 79 Madison Avenue, 5th Floor, New York, New York 10016 (the "Landlord") and Vanessa G. Jackson and Robert E. Lee, an individual(s) [IF MORE THAN ONE, jointly and severally] (collectively, the "Tenant"). Each of Landlord and Tenant shall be referred to herein as a "Party" and collectively, as the "Parties".

WHEREAS, Landlord is the fee owner of certain real property being, lying and situated in Brazos County, Texas such real property having a street address of 4008 Settlers Way, Bryan, Texas 77808 (the "Property").

WHEREAS, the Landlord has purchased the Property from the Tenant and the Parties wish for the Tenant to continue to occupy the Property and to have the right to (i) purchase the Property from the Landlord or (ii) sell the option to Landlord or an unrelated party.

WHEREAS, as an inducement to Landlord to purchase the Property and as part of the consideration for the purchase agreement between the Parties relating to the purchase and sale of the Property, Tenant agrees to lease the Property from Landlord and Landlord desires to grant to Tenant a lease to occupy the Property and to grant to Tenant an option to terminate this Agreement, all upon the terms and conditions of this Agreement.

NOW, THEREFORE, for and in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows:

1.  RENT AND ADDITIONAL RENT. Tenant shall pay Landlord the **annual rent of $15,480** during the Term (as defined below), in **monthly payments of $1,290** (the "Rent"), and any other charges payable under this Agreement ("Additional Rent"), each payable on the first (1st) day of each month in advance, and without notice, demand, counterclaim, offset, deduction, defense, or abatement, at such place as Landlord may from time to time specify by written notice to Tenant. The Rent and Additional Rent reserved herein shall be paid to Landlord absolutely net and without any claim on the part of Tenant for diminution, reduction, deduction, setoff or abatement and nothing shall suspend, abate or reduce any Rent to be paid hereunder

2.  LANDLORD OBLIGATIONS

EXHIBIT

C

a) With the exception of real estate taxes, homeowner's (or condominium owners') association dues, this is an absolutely net lease and Landlord shall not be required to provide any services or to do any act or thing with respect to the Property or the appurtenances thereto except as specifically set forth in this Agreement.

b) Subject to the further conditions of Section 4 of this Agreement, it is the intent of Landlord and Tenant that Tenant shall pay each and every item of expense of every kind and nature whatsoever, for the payment of which Landlord is, shall or may be or become liable by reason of its estate or interest in the Property, or by reason of any rights or interest of Landlord in or under this Agreement, or by reason of or in any manner connected with or arising from the ownership, leasing, operation, management maintenance, repair, rebuilding, renovation, use or occupancy of the Property, and Tenant agrees to indemnify and to save Landlord harmless from and against the same.

c) Landlord shall pay (a) real estate taxes, (b) homeowner's (or condominium owner's) association dues, (c) payments due with respect to liens and encumbrances placed on the Property by Landlord (other than any reciprocal easement agreements), unless same shall have been placed thereon as a result of a default of Tenant under this Agreement, or (d) income taxes and franchise taxes that are personal to Landlord.

d) Landlord and Tenant may, simultaneous with the execution of this Agreement, set forth and list items on Schedule "A" which is attached hereto, and made a part hereof, which Landlord or Tenant identifies as building systems or other conditions with respect to the Property which are in need of repair or replacement.

e) The Landlord may, in its discretion, or upon the request of Tenant, repair or replace items necessary to maintain suitable standards of habitability provided, however, that any actual cost or expense incurred by the Landlord in repairing or replacing the same shall be billed to Tenant as Additional Rent as set forth Section 1 of this Agreement.

f) Prior to the Option Expiration Date and subject to terms of this Agreement, Landlord will cooperate with Tenant in listing and marketing the Property for sale as defined in Section 6 of this Agreement. Such cooperation will include allowing the Property to be listed for sale with a broker of Tenant's choosing, subject to Landlord's written approval.

3.  UTILITIES AND SERVICES. During the Term, Tenant shall, at its own expense, provide all utilities or services in or to the Property, and must pay promptly as they become due all charges relating thereto, including, without limitation, water, sewer, electricity, garbage service, cable, telephone, fuel, gas, heat, oil and other public utilities. Landlord shall not be responsible for any utilities or services relating to the Property. Landlord does not warrant the quality or adequacy of the utilities or services specified above, nor does Landlord warrant that any of the utilities or services specified above will be free from interruption caused by repairs, improvements, or alterations of the building or the Property or any of the equipment and facilities of

the building, any labor controversy, or any other causes of any kind beyond Landlord's reasonable control. Any such interruption, and any other inability on Landlord's part to fulfill Landlord's lease obligations resulting from any such cause, will not be considered an eviction or disturbance of Tenant's use and possession of the Property, or render Landlord liable to Tenant for damages, or relieve Tenant from performing Tenant's lease obligations.

**4. TENANT OBLIGATIONS.**

a) Condition of Property: Tenant acknowledges that Tenant is accepting the Property in its "as is, where-is" condition. Upon the expiration of the Term, Tenant shall return vacant possession of the Property in its present condition and broom clean, reasonable wear and tear, fire casualty excepted. Tenant shall commit no waste to the Property and shall be responsible for all repairs and maintenance on the Property. Tenant shall maintain all appliances, equipment, furniture, furnishings and other personal property included under this Agreement and, upon the surrender of the Property on the termination date, Tenant shall surrender same to Landlord in the same condition as received, reasonable wear and tear excepted. In the event that Tenant defaults under the terms of this Section 4(a), Landlord may make necessary repairs or replacement, the cost of which shall be considered Additional Rent and then either (b) (i) credited to Landlord in the calculation of the Successor Purchaser Option Price (as defined below) or (ii) added to the Tenant Buy-Back Price (as defined below) as set forth Section 6 of this Agreement.

b) Alterations: Tenant shall not make any structural or material alterations, additions, modifications and/or changes to the Property during the Term, without the prior written consent of the Landlord.

c) Subletting: Tenant may only sublet said Property to a immediate family member (e.g. son, daughter, grandson, or granddaughter) subject to Landlord's prior written consent.

d) Additional Occupants: Other than immediate family members (e.g. son, daughter, grandson, or granddaughter), Tenant shall not allow any other person to occupy the Property for more than ten (10) days per year, without Landlord's prior written consent, and providing further that it does not violate any governmental rules or regulations.

e) Compliance with Law: Tenant shall comply with all building, zoning and health codes and other applicable laws for the use of said Property.

f) Tenant's Conduct: Tenant shall not conduct on Property any activity deemed extra hazardous, or a nuisance, or requiring an increase in fire insurance premiums.

g) Right of Termination and Re-Entry: In the event of any Event of Default, Landlord shall have full rights to terminate this Agreement to re-enter and re-claim possession of the Property, in addition to such other remedies available to Landlord arising from said breach, in accordance with the laws of the state and municipality in which the Property is located.

h) Cooperation: At all times during the Term, Tenant agrees to cooperate in listing and marketing the Property for sale as may be requested by Landlord. Such cooperation will include allowing the Property to be listed for sale with a broker, subject to Landlord providing Tenant with notice of the same.

5. TERM. Unless earlier terminated pursuant to the terms and conditions of this Agreement, the term of this Agreement shall commence on the date of this Agreement and shall expire at 11:59 PM on the date which is one (1) day prior to the date which is twelve (12) full months after the date of this Agreement (the "Initial Term"). Provided that this Agreement is in full force and effect, no Event of Default remains uncured and all Rent and Additional Rent has been paid current, Tenant shall have the option to renew this Agreement for additional one (1) year terms (each a "Renewal Term", and together with the Initial Term, the "Term"), each commencing on the expiration of the immediately preceding Term or Renewal Term, as the case may be. Tenant shall exercise each option to extend (a) the Initial Term, or (b) any Renewal Term, by providing written notice to Landlord at least ninety (90) days, but in no event more than one hundred twenty (120) days prior to the expiration of the then-current Term. Upon exercising an option to extend, this Agreement shall continue under the same terms and conditions as the Initial Term, except that each year, the Repurchase Price (as defined below) and the annual Rent for each Renewal Term shall increase by the greater of (a) Two and One-Half percent (2.5%) or (b) an amount reflecting the increase in the cost of living as such increase, if any, is reflected by a change in the "South Region All Items" Index for the "Consumers Price Index for all Urban Consumers" (Revised CPI-U) published by the Bureau of Labor Statistics of the U.S. Dept. of Labor (collectively, the "Consumer Price Index" or "CPI")(the "Option Period Increase").

6. TENANT TERMINATION OPTION.

a) Prior to the 36th month of the Term, or upon the termination of this Agreement, whichever is earlier (the "Outside Purchase Date"), Tenant shall have the right to terminate this Agreement ("Option to Terminate"), subject to the terms and conditions of this Section 6.In no instance shall the Option to Terminate be effective on or after the Outside Purchase Date.The Option to Terminate shall be exercised upon the date of the closing of the sale and transfer of title to the Property ("Closing Date") by the Landlord to either (i) Tenant as set forth in Section 6(b) below, Tenant Buy-Back, or (ii) to any third-party identified by Tenant in writing to Landlord (a "Successor Purchaser") as set forth in Section 6(e) and 6(f) below, Sale to Successor Purchaser, both upon terms and conditions acceptable to Landlord. The Successor Purchaser or Tenant (whichever is the purchaser of the Property from the Landlord) shall be responsible for all costs and fees relating to the purchase from the Landlord and the Option to Terminate, including all transfer taxes, Landlord's attorney fees,

closing costs, and all other charges. If the Successor Purchaser, or the Tenant (if purchasing from the Landlord), is obtaining financing for the purchase of the Property, Successor Purchaser or Tenant shall be responsible for all lender fees, including points and origination fees.

b) Tenant Buy-Back.As consideration for Landlord agreeing to sell the Property to Tenant on or before the Outside Purchase Date, the Tenant shall pay to the Landlord an amount equal to:

(i) $69,648 (the "Repurchase Price"), subject to any relevant Option Period Increase(s) as set forth in Section 5 of this Agreement; plus

(ii) all closing costs paid by Landlord in respect to the transfer of title of the Property to the Tenant, including without limitation, real estate brokers' commissions, real property transfer taxes, attorneys' fees and filing fees; plus

(iii) all Rent and Additional Rent due Landlord as of the Closing Date.

The amount to be paid by the Tenant as set forth in this Section 6(b)(i)-(iii) is referred to herein as the "Tenant Buy-Back Price".Landlord does not guarantee and it does not represent or warrant the amount of the Tenant Buy-Back Price to be paid by Tenant.

Tenant Buy-Back Example:By way of example only, if the Repurchase Price is $200,000, and Tenant desires to purchase the Property from prior to the Outside Purchase Date, and Landlord incurs closing costs totaling $10,000, the amount Tenant shall be required to pay Landlord at the closing of the transfer of title to Tenant would be a total of $210,000 ($200,000 Repurchase Price, plus $10,000 closing costs).

c) Sale to Successor Purchaser.As consideration for Tenant terminating the Agreement upon the sale of the Property to a Successor Purchaser on or before the Outside Purchase Date, the Landlord shall purchase the Option to Terminate from the Tenant for an amount equal to:

(i) the gross purchase price paid by the Successor Purchaser to Landlord; less

(ii) the Repurchase Price ($69,648, as defined in 6 (b) (i) above), subject to any relevant Option Period Increase(s) as set forth in Section 5 of this Agreement; less

(iii) all closing costs paid by Landlord in respect to the transfer of title of the Property to the Successor Purchaser, including without limitation, real estate brokers' commissions, real property transfer taxes, attorneys' fees and filing fees; less

(iv) all Rent and Additional Rent due Landlord as of the Closing Date.

The amount to be paid to the Tenant as set forth in Section 8(c)(i)-(iv) is referred to herein as the "Successor Purchaser Option Price". In no event can the Successor Purchaser Option Price to be paid by Landlord be less than Ten Dollars ($10.00). Landlord does not guarantee and it does not represent or warrant that Tenant shall receive any certain Successor Purchaser Option Price, except for the minimum amount set forth in the preceding sentence.

Successor Purchaser Example: By way of example only, if the Repurchase Price is $200,000, and the Landlord sells the Property to a Successor Purchaser for the sum of $375,000 prior to the Outside Purchase Date, and Landlord incurs closing costs totaling $20,000, the Successor Purchaser Option Price payable to Tenant would be $155,000 ($375,000 purchase price paid by Successor Purchaser to Landlord, less $200,000 Repurchase Price, less $20,000 closing costs).

d) On the Closing Date, if the Successor Purchaser is not the Tenant, the Successor Purchaser Option Price shall be paid by Landlord into an escrow account designated by Landlord. Payment of the Successor Purchaser Option Price shall be made to Tenant within five (5) business days after Landlord has confirmed that the Property is vacant and Tenant is no longer in possession of the Property.

e) Except upon an Event of Default, and notwithstanding any obligation of Landlord pursuant to Section 2(f) of this Agreement, it shall be the sole responsibility of Tenant to procure a Successor Purchaser for the Property.

f) To exercise the Option to Terminate, the Tenant shall deliver to the Landlord written notice of Tenant's intent to exercise the Option to Terminate, which notice shall contain the terms of the proposed sale the Successor Purchaser, including purchase price and the estimated Closing Date. Notwithstanding the foregoing, the actual Successor Purchaser Option Price to be paid to Tenant shall be calculated as of the closing of the transfer of title to the Property, and shall be paid to Tenant within five (5) days after the actual Closing Date. If the Tenant is the purchaser of the Property, all amounts due from Tenant for the Tenant Buy-Back Price shall be payable upon the transfer of title to the Property to the Tenant.

g) If the Tenant exercises the Option to Terminate, the Term of this Agreement shall expire on the Closing Date and all rights and obligations of the Parties shall terminate as of the Closing Date, except those which expressly survive termination of this Agreement.

h) Tenant, upon at least ten (10) days' prior notice by the Landlord, shall execute, acknowledge and deliver to the Landlord, and/or to any other person, firm or corporation specified by the Landlord, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the

annual Rent and Additional Rent have been paid, stating whether or not there exists any default by the Landlord under this Agreement, and, if so, specifying each such default, and any other matters reasonably requested by the Landlord or the recipient.

i) Landlord covenants and agrees with Tenant that upon Tenant paying the Rent and Additional Rent and observing and performing all the terms, covenants and conditions of this Agreement on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Property, subject to the terms and conditions of this Agreement.

7. CLOSING ADJUSTMENTS. At the time of the closing of title between the Landlord and Tenant for the purchase of the Property occurring on the date of this Agreement, no apportionments or other adjustments shall be made between the Parties, except for real estate taxes, homeowner's (or condominium owner's) association dues since the Tenant will be obligated to pay all charges for the maintenance and operation of the Property to the date of the closing and thereafter, as tenant, through the expiration of the Term.

8. DEFAULT. Landlord shall give written notice to Tenant to correct any of the following defaults (each, an "Event of Default"):

a) Failure to pay Rent or Additional Rent on time;

b) Improper assignment of the Agreement, improper subletting of all or part of the Property, or allowing another to use the Property without Landlord's written consent;

c) Improper conduct by Tenant or other occupant of the Property;

d) Failure of Tenant to deliver vacant possession of the Property pursuant to the terms and conditions of this Agreement; or

e) Failure to fully perform any other term or obligation in this Agreement.


9. REMEDIES UPON DEFAULT.

a) Tenant shall have five (5) days after Landlord gives written notice to cure an Event of Default.

b) If Tenant fails to cure an Event of Default within five (5) days after such written notice, then in addition to any other remedies available to Landlord at law or in equity, Landlord may terminate this Agreement by giving written notice of the termination.

c) If Tenant fails to cure an Event of Default within five (5) days after such written notice, then in addition to any other remedies available to Landlord at law or in equity, Tenant shall be deemed to have exercised his, her or its Option to Terminate.

d) If terminated, the Tenant shall lose entitlement to any refund of Rent or option consideration; provided, however, that Tenant shall be entitled to receive the Successor Purchase Option Price if the Property is sold to a Successor Purchaser, less any and all fees, costs and expenses incurred by Landlord, including, without limitation, those court and attorneys fees incurred with respect to dispossessing Tenant from the Property.

e) For this Agreement to be enforceable and effective, the Tenant must comply with all terms and conditions of this Agreement.

f) If this Agreement is terminated or Tenant vacates the Property prior to the end of the Term, Landlord may enter the Property and remove Tenant and any person or property and/or commence summary proceedings for eviction. The aforesaid actions are not the sole remedies of Landlord. If this Agreement is cancelled or Landlord takes back the Property, any cost or repair expended by Landlord shall be the obligation of Tenant and shall be deemed Additional Rent.

g) If Tenant fails to cure an Event of Default within five (5) days after such written notice, Landlord shall be entitled to sell the Property in any manner in its sole discretion, including, without limitation, listing and selling the Property through an online auction platform, such as ten-x.com, and all fees associated therewith shall reduce the Successor Purchaser Option Price by such amount.

10. FIRE AND CASUALTY. In the case of fire damage or other damage to the Property, Tenant shall give Landlord immediate notice of same. Upon receipt of such notice, Landlord may either (i) repair the Property, or (ii) terminate the Agreement.

a) If Landlord opts to repair the Property, Landlord shall have a reasonable time in which to do so. If the damage to the Property renders the Property uninhabitable, Landlord shall give notice to Tenant, after repairs are made, of the date on which the Property may be reoccupied. Rent for the period that Tenant cannot occupy the Property because of the damage shall be abated until the date which Tenant can re-occupy the Property.

b) In the event that Landlord terminates this Agreement because of the damage, and subject to any right of Tenant to receive a payment as set forth in Section 20(c) of this Agreement, Landlord shall give Tenant thirty (30) days notice of Landlord's intent to so terminate, in which event, Rent shall be due for the period

up to the date the Property incurred the damage. Upon the determination of the Landlord to terminate this Agreement, Landlord shall have the sole and exclusive option to transfer title of the Property directly to Tenant, or sell the Property to a third-party, whereupon Tenant shall be entitled to receive an amount equal to the Successor Purchaser Option Price.

11. LIABILITY. Landlord shall not be liable for any loss, damage or expense to any person or property except if such loss is caused by the willful acts of Landlord. Tenant shall be liable for the acts of Tenant, Tenant's family, guests and/or invitees. Landlord's cost and expense in repairing any such damage or from any claim resulting from such acts shall be billed as Additional Rent and shall be paid by Tenant to Landlord upon demand. If more than one Tenant is named, then such liability shall be joint and several.

12. ACCESS TO PROPERTY. Upon reasonable notice and at reasonable times, Landlord may enter the Property to inspect, repair or to show it to prospective purchasers, tenants or lenders. Tenant shall give Landlord keys to all locks for the Property. Tenant shall not change any locks or add any locks to the Property without obtaining Landlord's consent, and if given, Tenant shall provide keys to Landlord for these locks.

13. COMMISSION. No real estate commissions or any other commissions shall be paid in connection with this transaction. Each Party indemnifies the other from claims for brokerage commissions asserted by any third-party claiming a commission for work done on behalf of the indemnifying Party.

14. RECORDING OF AGREEMENT. Tenant shall not record this Agreement on the public records of any public office without the express and written consent of Landlord.

15. ACKNOWLEDGMENTS. The Parties are executing this Agreement voluntarily and without any duress or undue influence. The Parties have carefully read this Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy. The Parties have sought the advice of an attorney of their respective choice if so desired prior to signing this Agreement.

16. INABILITY TO PERFORM. If Landlord is unable to perform any of its obligations to be performed hereunder due to governmental orders, labor strife or inability to secure goods or materials, through no fault on the part of Landlord, this Agreement shall not be terminated or cancelled and such inability shall not impact upon Tenant's obligations hereunder.

17. SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE.

a) This Agreement is automatically subject and subordinate to the lien, provisions, operation and effect of all mortgages, deeds of trust, ground leases or other security instruments which may now or hereafter

encumber the Property (collectively, "Mortgages"), to all funds and indebtedness intended to be secured thereby, and to all renewals, extensions, modifications, recastings or refinancings thereof. The holder of any Mortgage to which this Agreement is subordinate shall have the right (subject to any required approval of the holders of any superior Mortgage) at any time to declare this Agreement to be superior to the lien, provisions, operation and effect of such Mortgage and Tenant shall execute, acknowledge and deliver all documents required by such holder in confirmation thereof.

b) Tenant shall, within ten (10) business days after Landlord's request, execute and deliver any requisite or appropriate document confirming the foregoing subordination. If Tenant fails timely to do so, then Tenant appoints Landlord as Tenant's attorney-in-fact to execute any such document for Tenant. Tenant waives the provisions of any statute or rule of law now or hereafter in effect which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease and Tenant's obligations hereunder in the event any foreclosure proceeding is prosecuted or completed or in the event the Property or Landlord's interest therein is transferred by foreclosure, by deed in lieu of foreclosure or otherwise.

c) So long as Tenant pays the Rent and Additional Rent, and there exists no Event of Default(s) under any terms of this Agreement, Tenant may peacefully occupy the Property for the Term. Tenant's right to non-disturbance shall survive a assignment as per Section 23 of this Agreement or an involuntary transfer of title by Landlord.

d) At the request of such transferee, Tenant shall attorn to such transferee and shall recognize such transferee as the landlord under this Lease provided such transferee agrees to assume Landlord's obligations under this Agreement arising from and after the date of the transfer. Tenant agrees that upon any such attornment, such transferee shall not be (i) bound by any payment of the Rent or Additional Rent more than one (1) month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this Agreement, but only to the extent such prepayments have been delivered to such transferee, (ii) bound by any amendment of this Agreement unless expressly permitted or required by this Lease or consented to by such then present holder of such Mortgage (if and to the extent such consent is required by the terms of such Mortgage), (iii) liable for damages for any breach, act or omission of any prior landlord, or (iv) subject to any offsets or defenses which Tenant might have against any prior landlord; provided, however, that after succeeding to Landlord's interest under this Agreement, such transferee shall agree to perform in accordance with the terms of this Agreement all obligations of Landlord arising after the date of transfer. Within five (5) days after the request of such transferee, Tenant shall execute, acknowledge and deliver any requisite or appropriate document submitted to Tenant confirming such attornment.

e) If any prospective or current holder of a Mortgage requires that modifications to this Agreement be obtained, and provided that such modifications (a) are reasonable, (b) do not adversely affect Tenant's use

of the Property as herein permitted, and (c) do not unreasonably increase Tenant's obligations hereunder or increase the Rent and other sums to be paid by Tenant, then Landlord may submit to Tenant an amendment to this Agreement incorporating such required modifications, and Tenant shall execute, acknowledge and deliver such amendment to Landlord within five (5) days after Tenant's receipt thereof.

f) If (i) the Property is at any time subject to a Mortgage, (ii) this Agreement and Rent payable hereunder is assigned to the holder of the Mortgage, and (iii) the Tenant is given written notice of such assignment, including the name and address of the assignee, then, Tenant shall not terminate this Agreement or make any abatement in the Rent payable hereunder for any default on the part of the Landlord without first giving notice, in the manner provided elsewhere in this Agreement for the giving of notices, to the holder of such Mortgage, specifying the default in reasonable detail, and affording such holder a reasonable opportunity to make performance, at its election, for and on behalf of the Landlord, except that, (x) such holder shall have at least thirty (30) days to cure the default; (y) if such default cannot be cured with reasonable diligence and continuity within thirty (30) days, such holder shall have any additional time as may be reasonably necessary to cure the default with reasonable diligence and continuity; and (z) if the default cannot reasonably be cured without such holder having obtained possession of the Property, such holder shall have such additional time as may be reasonably necessary under the circumstances to obtain possession of the Property and thereafter to cure the default with reasonable diligence and continuity.  If more than one such holder makes a written request to Landlord to cure the default, the holder making the request whose lien is the most senior shall have such right.

18.  NON-WAIVER.  Any failure by Landlord to insist upon Tenant's full compliance with the terms of this Agreement and/or to enforce such terms shall not be deemed to be a waiver of Landlord's rights to insist upon or so enforce the terms of this Agreement at a future date.

19.  TIMING.  Time is of the essence in this Agreement.

20.  INSURANCE AND INDEMNITY.

a) From and after the date of this Agreement, Tenant shall keep, at its sole cost and expense, all of its furniture, fixtures, and personal property (including also property under the care, custody or control of Tenant) which may be located in, upon or about the Property insured for the benefit of Tenant in an amount equivalent to the full replacement value or insurable value thereof against (i) loss or damage by fire; and (ii) such other risk or risks of a similar or dissimilar nature as are now, or may in the future be, customarily covered with respect to a tenant's furniture, fixtures, and personal property in a property building similar in construction, general location, use, occupancy and design to the Property, including, but without limiting the generality of the foregoing, windstorms, hail, explosions, water damage, vandalism, theft, malicious mischief, civil commotion and such other coverage as Tenant may deem appropriate or necessary.

b) Tenant agrees that such policy or policies of insurance shall contain a waiver of subrogation clause as to Landlord, and, anything in this Agreement to the contrary notwithstanding, Tenant waives, releases and discharges Landlord from all claims or demands whatsoever which Tenant may have or acquire arising out of damage to or destruction of the furniture, fixtures, and personal property of Tenant occasioned by fire or other cause, whether such claim or demand may arise because of the negligence or fault of Landlord and its agents, contractors, servants, employees, licensees or otherwise, provided, however, to the extent any such damage to or destruction of such property of Tenant is caused by the negligence or willful misconduct of Landlord or its agents, contractors, servants, employees, licensees and all or any portion of such loss is "deductible", then Landlord shall pay to Tenant the amount of such deductible loss (not to exceed $10,000 per event).Except with respect to any deductible loss, as aforesaid, Tenant agrees to look to the insurance coverage only in the event of such loss.

c) Landlord may maintain, for its benefit, commercial general liability insurance against claims for personal injury, death or property damage occurring upon, in or about the Property, such insurance to afford protection to Landlord. Tenant shall have no rights in or to any insurance proceeds received or obtained by Landlord as a result of a casualty or loss, except that Tenant shall be entitled to any insurance proceeds received or obtained which exceed the Repurchase Price, after Landlord has been repaid for all of its fees and expenses, including attorneys' fees, incurred in obtaining such proceeds.By way of example only, if the Repurchase Price is $200,000, and Landlord receives $300,000 in insurance proceeds for a casualty or loss, but Landlord has spent $20,000 to recover such sum, then Tenant shall be entitled to a payment of $80,000 ($300,000 insurance proceeds, less $200,000 Repurchase Price, less $20,000 closing costs).Notwithstanding the foregoing, if the casualty or loss or damage to or destruction of the Property is caused in whole or in part by the negligence or willful misconduct of the Tenant, its agents, servants, employees, guests and/or invitees, then Tenant shall not be entitled to any proceeds of insurance as set forth in this Section 20(c) of this Agreement.

d) From and after the date of this Agreement, Landlord may require Tenant to procure and maintain, at its sole cost and expense, a policy of commercial general liability insurance, insuring Landlord, Landlord's Mortgage holders and Tenant against all claims, demands or actions arising out of or in connection with Tenant's use or occupancy of the Property, or the condition of the Property, with limits of not less than One Million and No/100 Dollars ($1,000,000.00) for bodily injury including death of any one person or any one accident and in respect to property damaged or destroyed, and to be written by insurance companies reasonably satisfactory to Landlord.Tenant shall obtain a written obligation on the part of its insurance company to notify Landlord at least thirty (30) days prior to cancellation of such insurance.Such policies or duly executed binders of insurance shall be delivered to Landlord at least fifteen (15) days prior to the expiration of the policy term.The minimum limits of the commercial general liability policy of insurance shall in no way limit or diminish Tenant's liability elsewhere pursuant to the terms and conditions of this

Agreement.Landlord shall have the right to require such greater insurance limits as may then be customary.Tenant agrees to include in such policy contractual liability coverage insuring Tenant's indemnification obligations herein.Any such coverage shall be deemed primary to any liability coverage secured by Landlord.

e) Notwithstanding the limits of insurance specified in this Section, Tenant agrees to indemnify Landlord against all claims asserted against the Landlord arising out of Tenant's occupancy of the Property, including but not limited to, any claim of negligence all damage, loss or liability, including attorneys' fees, to the extent Tenant, its agents, servants, employees, guests and/or invitees causes Landlord any damages as a result of such risks.Such indemnification shall operate whether or not Tenant has placed and maintained the insurance specified in this Section, and whether or not such insurance, having been placed and maintained, proceeds from such insurance, actually are collectible from one or more of the insurance companies; provided, however, that Tenant shall be relieved of its obligation of indemnity herein pro tanto of the amount actually recovered from one or more of the insurance companies by reason of injury or damage to, or loss sustained on the Property;

21. MECHANIC'S LIENS.It is agreed that should Tenant cause any alterations, changes, additional improvements or repairs to be made to the Property, or material furnished or labor performed therein or thereon, neither Landlord nor the Property shall, under any circumstances, be liable for the payment of any expenses incurred or for the value of any such work done or material furnished to the Property or any part thereof; but all such alterations, changes, additions, improvements and repairs and materials and labor shall be at Tenant's expense, and Tenant shall be solely and wholly responsible to contractors, laborers and materialmen furnishing labor and material to the Property and building, or any part thereof for or on behalf of Tenant. Tenant shall not suffer or permit any mechanic's liens to be filed against the fee ownership of the Property nor against Tenant's leasehold interest in the Property, by reason of work, labor, services or materials supplied or claimed to have been supplied to Tenant or to any occupant of the Property.If any such mechanic's lien shall at any time be filed against the Property or the building and improvements thereon, Tenant shall, at its own cost and expense, cause the same to be cancelled and discharged of record by surety bond or appropriate cash deposit within thirty (30) days after the date of filing the same and notice thereof to Tenant, and Tenant shall indemnify and save harmless Landlord from and against any and all costs, expenses, claims, losses or damages resulting from the aforesaid mechanic's liens, if any.

22. HOLDOVER. If Tenant shall remain in the Property for any reason after the termination of this Agreement, Tenant shall be deemed a month to month Tenant at a monthly rental equal to Two Hundred (200%) percent of the Rent due in the month of the termination.Notwithstanding the above, Landlord shall not be required to accept Tenant's month-to-month tenancy and may at any time during such holdover period evict the Tenant.

23. NOTICES. Any notice or demand which, under the terms of this Agreement or under any statute must or may be given or made by the Parties shall be in writing, and shall be given or made by (i) hand, (ii) overnight courier service, next business day delivery, or (iii) made by certified mail, return receipt requested, to the addresses set forth below (or in each case to such other address as shall have last been furnished by like notice).Each notice or communication shall be deemed to have been given as of the date so mailed or delivered as the case may be.

Notices shall be given to:

To the Landlord:   EK REAL ESTATE SERVICES OF NY, LLC
c/o EasyKnock, Inc.
79 Madison Avenue, 6th Floor
New York, New York 10016
Attn: Notice Administrator

To the Tenant:   Vanessa G. Jackson and Robert E. Lee
4608 Settlers Way
Bryan, Texas 77808
9798203034
vgarrett201@hotmail.com

24. GOVERNING LAW AND VENUE. This Agreement shall be governed, construed and interpreted by, through and under the laws of the state in which the Property is located, without giving effect to that state's conflicts of laws principles.

25. ARBITRATION. Except as provided below OR UNLESS TENANT SUBMITS A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED BELOW), any and all claims between Tenant and Landlord will be resolved in binding arbitration rather than in court. Tenant and Landlord agree to submit to individual arbitration the resolution of any and all Claims (as defined below) by or between Tenant and Landlord, except that Tenant and Landlord agree that the following will not be subject to the mandatory arbitration provisions in this Section: (A) Landlord seeking a preliminary injunction, restraining order or other provisional equitable relief in any court whereby Landlord may suffer immediate and irreparable harm for which money damages may be inadequate and impossible to calculate (including, but not limited to, a Claim where such Claim will not be subject to the informal dispute resolution procedures described in Section); provided, however, that, subsequent to obtaining such preliminary injunction, restraining order or other provisional equitable relief, the Claim will then be submitted to arbitration in accordance with this

Section. Tenant and Landlord agree that this Agreement affects interstate commerce, and that the enforceability of this Section will be governed by, construed, and enforced, both procedurally and substantively, by the Federal Arbitration Act, 9 U.S.C. sections 1-9 ("FAA"). Arbitration is the referral of a dispute to one or more impartial persons for a final and binding determination. There is no judge or jury in arbitration, discovery is more limited than in court, there are no class or representative proceedings, and court review of an arbitration decision is limited. An arbitrator must follow this Agreement and can award on an individual basis the same damages and relief as a court (including, but not limited to, injunctive and declaratory relief, statutory damages, and attorneys' fees). "Claim(s)" means any dispute, claim or controversy by or between Tenant and/or Landlord relating to this Agreement, including, but not limited to, any contract, tort, statutory, or equity claims, but expressly excluding Landlord's claims relating to summary proceedings for eviction or possession of the Property, which may be brought in a court of competent jurisdiction by Landlord. Any arbitration will be administered by the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules (the "AAA Rules"), as modified by these Terms. Any arbitration initiated by Tenant or Landlord shall be initiated in New York, New York. The AAA Rules, and other information about the AAA, are available at the AAA's website at www.adr.org. A form for initiating arbitration proceedings is available on the AAA's website (https://www.adr.org, but contact the AAA if you have an issue accessing this link) and arbitration proceedings shall be initiated in the location described in this Section. As required by the AAA Rules, if Tenant initiates the arbitration proceedings, Tenant must send the original copy of the completed form to Landlord. If the Claim is for $10,000 or less, Tenant may choose whether the arbitration will be conducted solely based on documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing under the AAA Rules. In all cases, Tenant and Landlord shall exchange documents and other information that Tenant and Landlord intend to use in the arbitration. The Parties shall select one (1) arbitrator by mutual agreement. Unless Tenant and Landlord mutually agree otherwise, the arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If the Parties cannot agree on an arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by AAA. Tenant will have the option of making the first strike.

26. CLASS ACTION WAIVER. UNLESS YOU SUBMIT A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED IN THIS SECTION), TENANT AND LANDLORD AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WHETHER IN ARBITRATION OR IN COURT WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION. Tenant and Landlord expressly agree that any Claim is personal to Tenant and Landlord, shall only be resolved by an individual arbitration (or individual court proceedings with respect to Claims excluded from mandatory arbitration as described in Section 25), and shall in no event be brought as a class arbitration, a class action, or any other representative proceeding. The arbitrator (or court if the Claim is excluded from mandatory arbitration as described in Section 25) may only conduct an individual arbitration

(or court action if the Claim is excluded from mandatory arbitration as described in Section 25), and may not consolidate more than one person's claims and may not preside over any form of representative or class proceeding. If a court or arbitrator determines that this class action waiver is unenforceable in an action between Tenant and Landlord, then the agreement to arbitrate set forth in Section 25 of this Agreement will be unenforceable. Neither Tenant nor Landlord consent to class arbitration. Arbitration is not a mandatory condition of your contractual relationship with Landlord. If Tenant does not want to be subject to the arbitration provision set forth in Section 25, Tenant may opt out of the arbitration provision set forth in Section 25, by notifying Landlord, in writing, of Tenant's intent to opt out of the arbitration provision, either by (a) sending, within thirty (30) days of the date of this Agreement, electronic mail to leaseadmin@easyknock.com, stating Tenant's name and intent to opt out of the arbitration provision set forth in Section 25, or (b) by sending a letter by certified U.S. Mail, return receipt requested, or by any nationally recognized delivery service (e.g. UPS, Federal Express, etc.), or by hand delivery to Landlord's address, set forth in Section 23 of this Agreement. In order to be effective, the letter must clearly indicate Tenant's intent to opt-out of the arbitration provision set forth in Section 25, and must be dated and signed. The envelope containing the signed letter must be post-marked within thirty (30) days of the date this Agreement is executed by you. Tenant's writing opting-out of the arbitration provision, whether sent by (a) or (b) above, will be filed with a copy of this Agreement and maintained by Landlord. Should you not opt-out of the arbitration provision set forth in Section 25 within the thirty (30) day period, Tenant and Landlord shall be bound by the terms of the arbitration provision set forth in Section 25. Tenant has the right to consult with counsel of his, her or its choice concerning the arbitration provision set forth in Section 25. Tenant understands that Tenant will not be subject to retaliation if Tenant exercises his, her or its right to assert claims or opt-out of coverage under the arbitration provision set forth in Section 25.

27. TAX AND LEGAL MATTERS. Tenant understands that Tenant may suffer adverse legal and tax consequences as a result Tenant's sale, disposition and/or leasing of the Property. Tenant represents that Tenant has consulted with any tax or legal consultants Tenant deems advisable in connection with the sale, disposition and/or leasing of the Property and that Tenant has not received any legal or tax advice from Landlord or any of its representatives with respect the transactions contemplated hereby.

28. ASSIGNABILITY. Landlord has the right to freely assign its rights and obligations under this Agreement.

29. AGREEMENT CONTROLS.  In the event a conflict arises between the terms and conditions of this Agreement and the underlying contract of sale between Tenant and Landlord for Landlord's purchase of the Property, the terms of this Agreement shall control.

30. ENTIRE AGREEMENT; MODIFICATION. This document sets forth the entire agreement and understanding between the Parties relating to the subject matter herein and supersedes all prior discussions

between the Parties. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged.

IN WITNESS WHEREOF, Landlord and Tenant have respectively signed this Agreement as of the day and year first above written.

LANDLORD'S SIGNATURE:

EK REAL ESTATE SERVICES OF NY, LLC, or its assignee

*Benjamin Black*

By:

Name: Benjamin Black

Title: Chief Operating Officer

TENANT'S SIGNATURE: *Vanessa Yolanda Jackson*

By:

Name: Vanessa G. Jackson

TENANT'S SIGNATURE:

By:

Name: Robert E. Lee

## SCHEDULE "A"

### LIST OF REPAIRS/REPLACEMENTS REQUESTED BY TENANT, THE COST OF WHICH SHALL BE REDUCED FROM PAYMENT OF ANY TERMINATION OPTION PRICE

**AREA OF PROPERTY**                    **DESCRIPTION OF REPAIR/REPLACEMENT**

As a result of my/our inspection, please be advised that except as otherwise noted, I/we are not requesting the Landlord repair or replace any item, fixture, building system or equipment in the Property. I/we understand and agree that we are taking the Property "as is, where is" and subject to the terms and conditions of the Agreement.

*Vanessa Garrett Jackson*                    11/29/2018

TENANT SIGNATURE:                         Date:

                                          11/29/2018

Document Ref: IHBAP-FJXXG-ZBMPD-A8LGB                Page 18 of 19

**TENANT SIGNATURE:**                               Date:

**A. Settlement Statement**

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Ins Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | 6. ☐ Seller Finance | 13-309751-CA | 1334742 | |
| 7. ☐ Cash Sale. | | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| HK Real Estate Services of NY, LLC | Vanessa Garrett Jackson aka Vanessa Dawn | LendingOne, LLC ISAOA/ATIMA |
| 79 Madison Avenue, 5th Floor | Jackson and Robert E. Lee | c/o ISGN Fulfillment Agency, LLC Attn: Team 5 |
| Broadway, NY 10016 | 4608 Settlers Way | 2330 Commerce Pk. Dr. NE Ste.1 |
| | Bryan, TX 77803 | Palm Bay, FL 32905 |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| AUSTIN'S COLONY PH 5A, BLOCK 1, LOT 5 | Capital Title of Texas, LLC- Cashier Fee |
| 4608 Settlers Way | 13413 Galleria Circle #120 |
| Bryan, TX 77803 | Austin, TX 78738  Tax ID: 75-2848550 |
| | Underwritten By: Stewart |

| | Place of Settlement | I. Settlement Date |
|---|---|---|
| | Capital Title of Texas, LLC- Cashier Fee | 11/29/2018 |
| | 13413 Galleria Circle #120 | Fund: 11/29/2018 |
| | Austin, TX 78738 | |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $200,000.00 | 401. Contract Sales Price | $200,000.00 |
| 102. Personal Reduction | | 402. Personal Property | |
| 103. Settlement Charges to Borrower | $6,185.30 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. Rent | | 406. Rent | |
| 107. HOA Assessments 11/30/18 thru 12/31/18 | $10.82 | 407. HOA Assessments 11/30/18 12/31/18 | $10.82 |
| 108. County Property Taxes 11/30/18 thru 12/31/18 | $407.76 | 408. County Property Taxes 11/30/18 thru 12/31/18 | $407.76 |
| 109. Other | | 409. Other | |
| 110. Mud Notices | | 410. Mud Notices | |
| 111. School Property Taxes | | 411. School Property Taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $200,663.39 | **420. Gross Amount Due to Seller** | $200,478.30 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit of Earnest Money | $1,000.00 | 501. Excess Deposit | |
| 202. Principal Amount of New Loan(s) | $79,000.00 | 502. Settlement Charges to Seller (line 1400) | $5,336.07 |
| 203. | | 503. Existing Loan(s) Taken Subject to | |
| 204. Commitment Fee | | 504. to | |
| 205. | | 505. to | |
| 206. Tenant Lease Option | $133,663.30 | 506. Tenant Lease Option | $133,663.30 |
| 207. Processing Fee | $4,000.00 | 507. Processing Fee | $4,000.00 |
| 208. Seller Paid Closing Costs | $6,860.00 | 508. Seller Paid Closing Costs | $6,860.00 |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. Rent 11/29/18 thru 12/31/18 | $1,414.84 | 510. Rent 11/29/18 thru 12/31/18 | $1,414.84 |
| 211. HOA Assessments | | 511. HOA Assessments | |
| 212. County Property Taxes | | 512. County Property Taxes | |
| 213. Other | | 513. Other | |
| 214. Mud Notices | | 514. Mud Notices | |
| 215. School Property Taxes | | 515. School Property Taxes | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $216,952.84 | **520. Total Reduction Amount Due Seller** | $150,418.81 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from Borrower (line 120) | $200,663.30 | 601. Gross Amount due to Seller (line 420) | $200,478.30 |
| 302. Less amounts paid by/for borrower (line 220) | $216,952.84 | 602. Less reductions in amt. due seller (line 520) | $150,418.81 |
| 303. Cash To Borrower | $9,419.54 | 603. Cash To Seller | $50,059.79 |

Section 5 of the Real Estate Settlement Procedure Act (RESPA) requires the following:  • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;  • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate;  • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.  The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.  The information requested does not lend itself to confidentiality.

Previous Editions are Obsolete

Form HUD-1 (3/86)
Handbook 4305.2



EXHIBIT D

File No. 18-390751-CA

| L. Settlement Charges | | | Paid From | Paid From |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | $200,000.00 @ % = $0.00 | | | |
| | Division of Commission (line 700) as follows: | | Borrower's Funds at Settlement | Seller's Funds at Settlement |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission Paid at Settlement | | | $0.00 | $0.00 |
| 704. The following persons, firms or | to | | | |
| 705. corporations received a portion | to | | | |
| 706. of the real estate commission amount | to | | | |
| 707. shown above: | to | | | |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Loan Origination Fee   % | to LendingOne, LLC ISAOA/ATIMA | | $1,500.00 | |
| 802. Loan Discount   % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Processing Fee | to LendingOne, LLC ISAOA/ATIMA | | $100.00 | |
| 805. Document Preparation | to LendingOne, LLC ISAOA/ATIMA | | $595.00 | |
| 806. Mortgage Insurance Application | to | | | |
| 807. Assumption Fee | to | | | |
| 900. Items Required by Lender To Be Paid In Advance | | | | |
| 901. Interest from   11/29/2018 to   12/1/2018 @ $14.16/day | | | $28.30 | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard Insurance | months @ | per month | | |
| 1002. Mortgage Insurance | months @ | per month | | |
| 1003. Rent | months @ | per month | | |
| 1004. HOA Assessments | months @ | per month | | |
| 1005. County Property Taxes | months @ $444.44 | per month | | |
| 1006. Mud Notices | months @ | per month | | |
| 1007. Other | months @ | per month | | |
| 1008. School Property Taxes | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or Closing Fee | to Law Office of T. Alan Ceshker | | $490.00 | |
| 1102. Abstract or Title Search | to | | | |
| 1103. Title Examination | to | | | |
| 1104. Title Insurance Binder | to | | | |
| 1105. Document Preparation | to Law Office of T. Alan Ceshker | | $125.00 | |
| 1106. Notary Fees | to Simple Signings Notary Service | | $150.00 | |
| 1107. Attorney's Fees | to | | | |
| (Includes above items numbers | ) | | | |
| 1108. Title Insurance | to Capital Title of Texas | | $1,509.00 | |
| (Includes above items numbers | ) | | | |
| 1109. Lender's coverage | $79,000.00/$170.90 . | | | |
| 1110. Owner's coverage | $200,000.00/$1,429.00 | | | |
| 1111. Escrow Fee | to Capital Title of Texas | | | |
| 1112. Courier Fee | to T. Alan Ceshker | | $45.00 | |
| 1113. Guaranty Assessment Recoupment Charge | to Texas Title Insurance Guaranty Association | | $0.00 | $0.00 |
| 1114. 60% of Title Premium | to Law Office of T. Alan Ceshker | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Government Recording Charges | Deed $34.00 ; Mortgage $134.00 ; Rel | to Capital Title of Texas | $168.00 | |
| 1202. City/county tax/stamps | Deed ; Mortgage | to | | |
| 1203. State tax/stamps | Deed ; Mortgage | to | | |
| | | | | |
| 1204. Tax Certificate | to United Tax Service, Inc. | | $59.00 | |
| 1205. E Recording Fee | to United eRecording | | $27.00 | |
| 1206. Assignment of Rents | to Capital Title of Texas | | $54.00 | |
| 1300. Additional Settlement Charges | | | | |
| 1301. 2018 Property Taxes | to Brazos County Tax Assessor | | | $5,335.67 |
| | | | | |
| 1302. HOA Transfer | to BHHS Caliber Realty | | $125.00 | |
| 1303. HOA | to | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $5,185.00 | $5,335.67 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

EK Real Estate Services of NY, LLC,
by Easy Knock, Inc., its Sole Member

By: _____
Benjamin Black, President

Vanessa Orrett Jackson aka Vanessa Dawn Jackson
_____

Robert E. Lee
_____

**SETTLEMENT AGENT CERTIFICATION**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____    11/29/18
Settlement Agent                    Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous Editions are Obsolete                    Page 2                    form HUD-1 (3/86)
                                                                                            Handbook 4305.2

BK Real Estate Services of NY, LLC,
by Busy Knock, Inc., its Sole Member

By: _____
Benjamin Black, President

_____
Vanessa Dawn Jackson fka Vanessa Dawn Jackson

_____
Nicole Clarke

**SETTLEMENT AGENT CERTIFICATION**

The HUD-1 Settlement Statement which I have prepared is a true and accurate
account of this transaction. I have caused the funds to be disbursed in
accordance with this statement.

_____        11/29/18
Settlement Agent                  Date

Warning: It is a crime to knowingly make false statements to the United
States on this or any other similar form. Penalties upon conviction can
include a fine and imprisonment. For details see: Title 18 U.S. Code Section
1001 and Section 1010.

Previous Editions are Obsolete                Page 2                form HUD-1 (3/86)
                                                                   Handbook 4305.2

EK Real Estate Services of NY LLC
July 20,2020

*Via CMRRR & First-Class Mail*

Vanessa G. Jackson and Robert E. Lee and All Occupants
4008 Settlers Way
Bryan, Texas 77808

Re: Lease with Tenant Option AgreementAgreement dated November 30, 2018 ( the "Lease") by and between Vanessa G. Jackson and Robert E. Lee and EK Real Estate Services of NY, LLC (the "Landlord") for real property commonly known as 4008 Settlers Way, Bryan, Texas 77808 (the "Property")

Dear Vanessa G. Jackson and Robert E. Lee :

The purpose of this letter is to notify you of the Landlord's intention to enforce all remedies allowed by the Lease and applicable law including, but not limited to, rescission of the Lease.

You have failed to timely make payments for the months of December 2019; January 2020; February 2020; March 2020; April 2020; May 2020; June 2020, and July 2020. This constitutes a violation of Paragraph 1 of the Lease. The delinquent amount consists of the following:

(1) $9,443.50 (rental payment)
(2) $0.00 (principal payment)
(3) $0.00 (interest payment)
(4) $0.00 (late fee)

As a result of your violation, the Landlord has referred the default to their internal legal team to enforce the Lease.

YOU ARE FURTHER NOTIFIED THAT, the landlord will elect to declare that forfeiture of your lease agreement under which you hold possession of the above described premises if you fail to perform or otherwise comply with this notice, and will institute eviction proceedings to seek a judgement to recover rent, possession of said premises, any costs incurred by landlord in enforcing the lease agreement and commencing eviction proceedings (such as attorney's fees) and any statutory damages allowed by law.



EXHIBIT
E

You are hereby notified you have 30 days from the date of this letter to cure the violation by paying all amounts due. Failure to cure the violation within 30 days from the date of this letter will result in the Landlord pursuing all rights and remedies allowed by law and the Lease.

For any questions please direct your contact to either collections@easyknock.com or 646-690-8636

EK Real Estate Services of NY LLC

Benjamin Black

Landlord
Collections Department

## NOTICE

YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY. UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE THIRTY (30) DAYS FROM July 25, 2020 THE LANDLORD HAS THE RIGHT TO TAKE POSSESSION OF YOUR PROPERTY.

Received & Filed 10/7/2020 4:05 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Samantha McQueen
Envelope# - 46980828

CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: 20-002597-CV-85

COURT *(FOR CLERK USE ONLY)*:

STYLED Vanessa Garett Jackson v. EK Real Estate Services of NY, LLC, et. al

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing case information sheet is: |
|---|---|---|
| Name: Robin M. Ziek | Email: rziek@sbcglobal.net | Plaintiff(s)/Petitioner(s): Vanessa Garett Jackson | ☒Attorney for Plaintiff/Petitioner<br>☐Pro Se Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other: |
| Address: 3401 Allen Parkway, Suite 101 | Telephone: 713-222-8030 | | Additional Parties in Child Support Case: |
| City/State/Zip: Houston, Texas | Fax: 832-565-9011 | Defendant(s)/Respondent(s): EK Real Estate Services of NY, LLC  LendingOne, LLC | Custodial Parent:  Non-Custodial Parent: |
| Signature: | State Bar No: 22262595 | [Attach additional page as necessary to list all parties] | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case** *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐Consumer/DTPA<br>☐Debt/Contract<br>☐Fraud/Misrepresentation<br>☐Other Debt/Contract:<br><br>*Foreclosure*<br>☐Home Equity—Expedited<br>☐Other Foreclosure<br>☐Franchise<br>☐Insurance<br>☐Landlord/Tenant<br>☐Non-Competition<br>☐Partnership<br>☐Other Contract: | ☐Assault/Battery<br>☐Construction<br>☐Defamation<br>*Malpractice*<br>  ☐Accounting<br>  ☐Legal<br>  ☐Medical<br>  ☐Other Professional<br>  Liability:<br><br>☐Motor Vehicle Accident<br>☐Premises<br>*Product Liability*<br>  ☐Asbestos/Silica<br>  ☐Other Product Liability<br>  List Product:<br><br>☐Other Injury or Damage: | ☐Eminent Domain/<br>  Condemnation<br>☐Partition<br>☒Quiet Title<br>☐Trespass to Try Title<br>☐Other Property: | ☐Annulment<br>☐Declare Marriage Void<br>*Divorce*<br>  ☐With Children<br>  ☐No Children | ☐Enforcement<br>☐Modification—Custody<br>☐Modification—Other |
| | | **Related to Criminal Matters** | **Other Family Law** | **Title IV-D** |
| | | ☐Expunction<br>☐Judgment Nisi<br>☐Non-Disclosure<br>☐Seizure/Forfeiture<br>☐Writ of Habeas Corpus—<br>  Pre-indictment<br>☐Other: | ☐Enforce Foreign<br>  Judgment<br>☐Habeas Corpus<br>☐Name Change<br>☐Protective Order<br>☐Removal of Disabilities<br>  of Minority<br>☐Other: | ☐Enforcement/Modification<br>☐Paternity<br>☐Reciprocals (UIFSA)<br>☐Support Order |
| **Employment** | **Other Civil** | | | **Parent-Child Relationship** |
| ☐Discrimination<br>☐Retaliation<br>☐Termination<br>☐Workers' Compensation<br>☐Other Employment: | ☐Administrative Appeal<br>☐Antitrust/Unfair<br>  Competition<br>☐Code Violations<br>☐Foreign Judgment<br>☐Intellectual Property | ☐Lawyer Discipline<br>☐Perpetuate Testimony<br>☐Securities/Stock<br>☐Tortious Interference<br>☐Other: | | ☐Adoption/Adoption with<br>  Termination<br>☐Child Protection<br>☐Child Support<br>☐Custody or Visitation<br>☐Gestational Parenting<br>☐Grandparent Access<br>☐Parentage/Paternity<br>☐Termination of Parental<br>  Rights<br>☐Other Parent-Child: |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐Tax Appraisal<br>☐Tax Delinquency<br>☐Other Tax | *Probate/Wills/Intestate Administration*<br>  ☐Dependent Administration<br>  ☐Independent Administration<br>  ☐Other Estate Proceedings | ☐Guardianship—Adult<br>☐Guardianship—Minor<br>☐Mental Health<br>☐Other: |

**3. Indicate procedure or remedy, if applicable** *(may select more than 1)*:

| | | |
|---|---|---|
| ☐Appeal from Municipal or Justice Court<br>☐Arbitration-related<br>☐Attachment<br>☐Bill of Review<br>☐Certiorari<br>☐Class Action | ☐Declaratory Judgment<br>☐Garnishment<br>☐Interpleader<br>☐License<br>☐Mandamus<br>☐Post-judgment | ☐Prejudgment Remedy<br>☐Protective Order<br>☐Receiver<br>☐Sequestration<br>☐Temporary Restraining Order/Injunction<br>☐Turnover |

Received & Filed 10/7/2020 4:05 PM
Gabriel Garcia, District Clerk
Samantha McQueen
Brazos County, Texas
Envelope#: 46880828

*Brazos County*



300 E. 26th Street, Suite 2201
*Bryan TX 77803*
*(979) 361-4230-4240*

*Gabriel Garcia*
*District Clerk*

## ISSUANCE OF PROCESS INSTRUCTIONS

20-002597-CV-85
Cause Number: _____

**Please issue the following type of process:**

☑ Citation   ☐ Citation by Publication   ☐ Citation by Posting

☐ Writ of Sequestration   ☐ Writ of Garnishment   ☐ Writ of Attachment

☐ Subpoena-Civil   ☐ Subpoena-Criminal   ☐ Bill of Cost

☐ Notice of Application of Protective Order

**Requesting Party's Name, Address and Phone Number:**

Robin M. Ziek _____

3401 Allen Parkway, Suite 101 _____

Houston, Texas 77019 _____ email - rziek@sbcglobal.net

**Name and Address of person to be served:**

EK Real Estate Services of NY, LLC by serving its Registered Agent, Corporation Services

Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620,

Austin, Travis County, Texas 78701

**Documents to serve with Citation:**

Original Petition, Emergency Motion to Stay Eviction Proceeding and Request for

Disclosures _____

**Please check one:**

☐   Attorney/Runner/Process Server will pick up (Put in Runners Box)

☑   Email to Attorney's Office/Requesting Party

☐   Mail to Attorney's Office/Requesting Party

☐   Forward to Sheriff's Office

☐   Serve by Certified Mail

---

**The Brazos County District Clerk's Office cannot issue any process until the above information is provided and the correct fees have been paid.**

Received & Filed 10/7/2020 4:05 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Samantha McQueen
Envelope#: 46980838

*Brazos County*



*Gabriel Garcia*
*District Clerk*

*300 E. 26th St., Suite 1201*
*Bryan TX 77803*
*(979) 361-4230-4240*

## ISSUANCE OF PROCESS INSTRUCTIONS

### 20-002597-CV-85

Cause Number: _____

**Please issue the following type of process:**

☑ Citation    ☐ Citation by Publication    ☐ Citation by Posting

☐ Writ of Sequestration    ☐ Writ of Garnishment    ☐ Writ of Attachment

☐ Subpoena-Civil    ☐ Subpoena-Criminal    ☐ Bill of Cost

☐ Notice of Application of Protective Order

**Requesting Party's Name, Address and Phone Number:**

Robin M. Ziek

3401 Allen Parkway, Suite 101

Houston, Texas 77019    *email- rziek@sbcglobal.net*

**Name and Address of person to be served:**

LendingOne, LLC, by serving its Registered Agent, Registered Agents, Inc., 5900 Balcones

Drive, Suite 100, Austin, Travis County, Texas 78731

**Documents to serve with Citation:**

Original Petition, Emergency Motion to Stay Eviction Proceeding and Request for

Disclosures

**Please check one:**

☐    Attorney/Runner/Process Server will pick up (Put in Runners Box)

☑    Email to Attorney's Office/Requesting Party

☐    Mail to Attorney's Office/Requesting Party

☐    Forward to Sheriff's Office

☐    Serve by Certified Mail

---

**The Brazos County District Clerk's Office cannot issue any process until the above information is provided and the correct fees have been paid.**

OCT 1 6 2020

DELIVERED THIS _____ 20 __

CARLOS A. LOPEZ
CONSTABLE PCT. 5 TRAVIS COUNTY, TEXAS
BY _____
ROBIN M. ZIEK
DEPUTY

**CLERK OF THE COURT**
Gabriel Garcia
300 East 26th Street, Suite 1200
Bryan, TX 77803

**ATTORNEY FOR PLAINTIFF**
ROBIN M. ZIEK
3401 Allen Parkway, Suite 101
Houston, TX 77019

THE STATE OF TEXAS                    **CITATION**

NOTICE TO THE DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

To: **EK Real Estate Services of NY, LLC, by serving its Registered Agent, Corporation Services Company d/b/a CSC-Lawyers Incorporation Service Company who may be served at 211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701** Defendant,

Greeting:
     You are hereby commanded to appear by filing a written answer to the **ORIGINAL PETITION, EMERGENCY MOTION TO STAY EVICTION PROCEEDING AND REQUEST FOR DISCLOSURES** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **85th District Court** of Brazos County, Texas at the Courthouse of said County in Bryan, Texas.  Said Petition was filed on **October 07, 2020** in the case, numbered **20-002597-CV-85** on the docket of said court, and styled,

**VANESSA GARRETT JACKSON**
**vs.**
**EK REAL ESTATE SERVICES OF NY, LLC, an affiliate of EASYKNOCK, INC. and LENDING ONE, LLC**

     The nature of Plaintiff's demand is fully shown by a true and correct copy of the **ORIGINAL PETITION, EMERGENCY MOTION TO STAY EVICTION PROCEEDING AND REQUEST FOR DISCLOSURES** accompanying this citation and made a part thereof.
     The officer executing the writ shall promptly serve the same according to requirements of the law, and the mandates thereof, and make due return as the law directs.
     Issued and given under my hand and sealed of said Court at office, on this the 8th day of October, 2020.

Gabriel Garcia
**District Clerk of Brazos County, Texas**

By___*S McQueen*___ Deputy

**OFFICER'S RETURN**

          Came to hand on the _____ day of _____, 20___, at _____ o'clock ___.M.
Executed at _____, within the County of _____ at _____ o'clock ___.M. on the _____ day of _____, 20___, by delivering to the within named_____ each, in person, a true copy of this citation together with the accompanying copy of the petition, having first attached such copy of such petition to such copy of citation and endorsed on such copy of citation the date of delivery.
          Total fee for serving this citation_____

                                         Sheriff Account

To certify which witness my hand officially.                    No._____

For Clerk's Use
Taxed_____
Returned Record_____

Sheriff of _____ Carlos B. Lopez _____ County, Texas
By _____ Constable Pct. 5, Travis County, Texas _____ Deputy

Received & Filed 11/5/2020 4:07 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Denise Ray
Envelope# - 47858575

## CAUSE NO. 20-002597-CV-85

| | | |
|---|---|---|
| **VANESSA GARRETT JACKSON,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **85ᵗʰ JUDICIAL DISTRICT** |
| | § | |
| **EK REAL ESTATE SERVICES OF NY, LLC,** | § | |
| **an affiliate of EASYKNOCK, INC. and** | § | |
| **LENDING ONE, LLC,** | § | **BRAZOS COUNTY, TEXAS** |
| | § | |
| *Defendants***.** | § | |

## DEFENDANT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

*Defendant* EK Real Estate Services of NY, LLC ("***Defendant***")[1], files its Original Answer and Affirmative Defenses to Plaintiff's Original Petition, Emergency Motion to Stay Eviction Proceeding and Request for Disclosures (the "***Petition***") of Plaintiff Vanessa Garrett Jackson ("***Plaintiff***").

## GENERAL DENIAL

1.     Defendant, pursuant to Rule 92 of the Texas Rules of Civil Procedure, generally denies all of the claims as alleged by Plaintiff, and respectfully prays that Plaintiff be required to prove her claims as alleged by a preponderance of the evidence or such higher standard as may be applicable.

## AFFIRMATIVE DEFENSES

2.     Some or all of Plaintiff's claims are barred by failure of consideration.

3.     Plaintiff's claims are barred, in whole or in part, because Defendant's conduct was not the producing, nor the proximate, cause of Plaintiff's alleged losses, damages, and/or injuries.

4.     Plaintiff's claims are barred, in whole or in part, because Plaintiff is unable to prove her alleged losses, damages, and/or injuries in accordance with Texas law.

---

[1] Defendant denies it is an affiliate of Lending One, LLC.

5.      Some or all of Plaintiff's claims are barred due to unclean hands.

6.      Some or all of Plaintiff's claims are barred by the economic-loss doctrine.

7.      Some or all of Plaintiff's claims are barred by her failure to perform her own contractual obligations.

8.      Plaintiff is not entitled to her attorneys' fees.

9.      Plaintiff's claims fail due to the doctrines of estoppel and/or quasi estoppel.

10.      Defendant is entitled to an offset of any damages awarded under the doctrine of recoupment and offset.

11.      Plaintiff has failed to state a claim upon which relief may be granted.

12.      Some or all of Plaintiff's claims are barred due to the statute of frauds.

13.      Defendant is equitably and contractually subrogated as to all of the claims contained in Plaintiff's suit.

**WHEREFORE**, Defendant prays that this Court enter judgment that Plaintiff take nothing on her alleged claims, that Plaintiff's claims be dismissed in their entirety and for such other and further relief, both specific and general, at law and equity, to which Defendant may be entitled.

Respectfully submitted,

**By:** _/s/ Matthew A. Knox_

MATTHEW A. KNOX
State Bar No. 24071102
mknox@mcglinchey.com
**MCGLINCHEY STAFFORD, PLLC**
1001 McKinney, Suite 1500
Houston, TX 77002
Telephone: (713) 520-1900
Facsimile: (713) 520-1025
*Attorneys for Defendant EK Real Estate*
*Services of NY, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2020, a copy of the above and foregoing was filed electronically with the Clerk of Court using the Court's electronic filing system. Notice of this filing has been forwarded to counsel for Plaintiff, as shown below.

***<u>Via  CMRRR, Email and/or Via the Court's E-Filing Service System</u>***
Robin M. Ziek
3401 Allen Parkway, Suite 101
Houston, Texas 77019

Stephen D. Jackson
Stephen D. Jackson & Associates
steve@stevejacksonlaw.com
215 Simonton
Conroe, Texas 77301
***Attorneys for Plaintiff***

  */s/ Matthew A. Knox*              
**Matthew A. Knox**

11/13/2020 10:30 AM
Gabriel Garcia, District Clerk
Brazos County, Texas
Samantha McQueen
Envelope# - 48070571

CAUSE NO. 20-002597-CV-85

| | | |
|---|---|---|
| VANESSA GARRETT JACKSON | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | BRAZOS COUNTY, TEXAS |
| | § | |
| EK REAL ESTATE SERVICES OF | § | |
| NY, LLC, an affiliate of | § | |
| EASYKNOCK, INC. and | § | |
| LENDING ONE, LLC | § | 85TH JUDICIAL DISTRICT |

## ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW LendingOne, LLC, a Defendant in the above entitled and numbered cause and files this its answer to Plaintiff's Original Petition, Emergency Motion to Stay Eviction Proceeding and Request for Disclosures.

Subject to such stipulations and admissions as may hereafter be made to matters not in controversy between the parties, Defendant asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure and demands that Plaintiff be required to prove the charges and allegations against it by a preponderance of the evidence in accordance with the laws of the State of Texas.

WHEREFORE, PREMISES CONSIDERED, Defendant LendingOne, LLC prays that Plaintiff Vanessa Garrett Jackson recovers nothing against Defendant and that Defendant recovers from Plaintiff all costs of Court expended, and for such other and further relief, both legal and equitable, to which Defendant may show itself justly entitled.

Respectfully submitted,

BUCK KEENAN LLP

By: /s/Andrew. C. Wright
    ANDREW C. WRIGHT
    State Bar No. 24063077
    HELEN H. MCLAUGHLIN
    State Bar No. 24087706
    2229 San Felipe, Suite 1000
    Houston, Texas 77019
    (713) 225-4500
    (713) 225-3719 Telecopier
    wright@buckkeenan.com
    hmclaughlin@buckkeenan.com

ATTORNEYS FOR DEFENDANT
LENDINGONE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record, in compliance with the Texas Rules of Civil Procedure, on the 13th day of November 2020.

Robin M. Ziek
3401 Allen Parkway, Suite 101
Houston, Texas 77019
and
Stephen D. Jackson
Romi L. Schwartz
Stephen D. Jackson & Associates
215 Simonton
Conroe, Texas 77301
steve@stevejacksonlaw.com
romi@stevejacksonlaw.com
*Attorneys for Plaintiff*

/s/Andrew C. Wright
ANDREW C. WRIGHT

2