United States District Court
Southern District of Texas
**ENTERED**
March 26, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VANESSA GARRETT JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-3867 |
| | § | |
| EK REAL ESTATE SERVS. OF NY, LLC | § | |
| and LENDING ONE, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises from a sale-leaseback transaction of a homestead property located in Brazos County, Texas.  EK Real Estate Services of New York, LLC moves to compel Vanessa Jackson to arbitrate her claims and for the court to either dismiss this case or stay it pending arbitration.  (Docket Entry No. 11).  Jackson has responded, and EK Real Estate has replied. (Docket Entry Nos. 13, 19).  Based on the pleadings, the motion and response, the record, and the applicable law, the court denies the motion to compel arbitration and dismiss or stay the case.  The reasons are explained below.

**I.      Background[1]**

EK Real Estate is a New York limited-liability company headquartered in New York. (Docket Entry No. 1 at ¶ 11).  Its sole member is EasyKnock, Inc., which is incorporated in Delaware.  (*Id.*).  The codefendant, LendingOne, LLC, is a limited-liability company organized in Delaware, with its principal place of business in Florida.  (*Id.* at ¶ 12).

---

[1]  Although EK Real Estate generally denies Jackson's allegations, (Docket Entry No. 1-1 at 50), most of the facts presented here are undisputed.

In 2002, Jackson's parents built a house for her and her children in Bryan, Texas.  (Docket Entry No. 1-1 at ¶ 7).[2]  In 2017, Jackson inherited the property as part of her father's estate.  (*Id.*). There was no mortgage on the property, which was her homestead under Texas law.  In 2018, Jackson encountered financial difficulties and needed to borrow money, but she could not qualify for most lenders.  She found EasyKnock online.  At her request, EasyKnock sent her a marketing package stating that she could "access [the] equity in [her] home by allowing [her] to stay in [her] home . . . and repay . . . [a] loan with interest which would allow [her] to gain back clear title to [her] Property."  (Docket Entry No. 14 at 1).

According to Jackson, she sent EasyKnock copies of her paystubs, which showed a post-tax weekly income of $554.10.  (Docket Entry No. 13-3).  Because Jackson's income was so low, EasyKnock told Jackson to include her roommate, Robert E. Lee, on the application and to include his disability income.  (Docket Entry No. 14 at 2).  Jackson and Lee are not married, and Lee had no interest in the property.  (*Id.*).

In November 2018, EasyKnock sent an attorney to Jackson's home to complete the process. (*Id.*).  That consisted of two documents for Jackson to sign.  The first was a General Warranty Deed with Vendor's Lien, conveying the title and deed to Jackson's homestead to EK Real Estate. (Docket Entry No. 1-1 at 17).  The second was a "Lease With Tenant Option Agreement," in which Jackson agreed to pay rent to EK Real Estate for 12 months, with the option to renew.  (Docket Entry No. 1-1 at 20).  Jackson stated in her declaration that she believed the purpose of the transaction was to allow her to use the equity in her home as the basis for the $50,069.79 loan she received.  She would be able to remain in her home, paying $1,290.00 per month as "lease

---

[2]  The property is located at 4008 Settler's Way, Bryan, Brazos County, Texas.  It is specifically described as Lot Five (5), Block One (1), Austin Colony Phase 5A, City of Bryan, as recorded in Volume 3726 of the Official Records of Brazos County, Texas.  (Docket Entry No. 1-1 at ¶ 7).

payments" for the first 12 months.  At the end of three years, if the loan was repaid, she would have clear title to the property.  (Docket Entry No. 14 at 1; Docket Entry No. 1-1 at ¶ 9).  Jackson alleges that she was unaware that she had deeded her entire interest in the property, valued at over $200,000, to EK Real Estate in exchange for the $50,069.79.  (Docket Entry No. 14 at 2; Docket Entry No. 1-1 at ¶ 11).  She was also unaware that EK Real Estate had placed Lee on the deed. (Docket Entry No. 14 at 2).  Jackson alleges that, without counsel, she took 20 minutes to sign the paperwork presented by EasyKnock's attorney.  (*Id.*).

By December 2019, Jackson and Lee had fallen behind on the payments.  (Docket Entry No. 1-1 at ¶ 12).  In July 2020, Benjamin Black, the "landlord" for EK Real Estate, notified Jackson and Lee that they owed rent for seven months, and that Black would initiate eviction proceedings and EK Real Estate would take possession of the property unless Jackson and Lee paid $9,443.00 by August 24, 2020.  (Docket Entry No. 13-7 at 2–3).

In September 2020, EK Real Estate filed an eviction action in the Justice Court of Brazos County, Texas, Precinct 2.  (Docket Entry No. 13-10).  Jackson answered and filed an original petition and emergency motion to stay the eviction proceeding in a Brazos County, Texas, court. (Docket Entry No. 1-1).  Besides a stay of eviction, Jackson sought:  (1) to quiet title to the property by voiding the deed as impermissible under § 41.006 of the Texas Property Code; (2) a declaratory judgment that (a) the defendants have no ownership in the property, (b) the deed is void, (c) the deed of trust between the defendants is void, and (d) Jackson is the owner of the property; (3) unliquidated damages, mental-anguish damages, treble damages, and attorneys' fees under the Texas Deceptive Trade Practices Act; (4) damages, statutory penalties, and attorneys' fees for usury under the Texas Finance Code; and (5) forfeiture of all principal, interest, and other amounts charged and received, for violating the Texas Finance Code.  (*Id.* at ¶¶ 19–20, 27, 32–34).

3

In October 2020, the state court dismissed EK Real Estate's eviction action for lack of jurisdiction.   (Docket Entry No. 13-11).  EK Real Estate then timely removed[3]on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  (Docket Entry No. 1).

EK Real Estate has moved to compel arbitration and to either dismiss or stay the case. (Docket Entry No. 11).  Jackson has responded, and EK Real Estate has replied.  (Docket Entry Nos. 13, 19).

## II.     The Legal Standards

### A.       The Arbitration Agreement

District courts must enforce valid arbitration agreements under the Federal Arbitration Act, 9 U.S.C. § 2.[4]  Under the FAA, federal courts generally determine (1) whether a valid agreement to arbitrate exists and (2) whether a dispute is covered by that agreement.  *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003); *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1321 (5th Cir. 1994).  "Generally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal law determines the scope of the arbitration clause."  *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1077–78 (5th Cir. 2002), *opinion supplemented on denial of rehearing,* 303 F.3d 570 (5th Cir. 2002).  If there is a valid arbitration agreement, the court must decide whether the dispute is within the scope of that

---

[3]  LendingOne did not oppose removal.  (Docket Entry No. 1 at ¶ 21).

[4]  Section 2 states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

agreement. *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006). "[A]ll doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, L.L.C. v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004). The party resisting arbitration has the burden of establishing that the dispute is outside the scope of the arbitration clause. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003).

### B.   The Motion to Dismiss Based on the Arbitration Agreement

EK Real Estate argues that, if the arbitration clause is enforceable, the court should dismiss this action or stay it pending arbitration. (Docket Entry No. 11 at 2, 9–10); *see Gonzales v. Brand Energy & Infrastructure Servs., Inc.*, 2013 WL 1188136, at *5 (S.D. Tex. March 20, 2013) ("In the Fifth Circuit, when all issues before the court are arbitrable, the court should dismiss the action." (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992))).

The Fifth Circuit has not decided "whether Rule 12(b)(1) or 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration provision," but the court has "accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor of arbitration." *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019), *as revised* (June 6, 2019) (citations omitted). Because EK Real Estate moved to dismiss under Rule 12(b)(3), that standard applies. (Docket Entry No. 11 at 9–10); *see Id.*

"When deciding a Rule 12(b)(3) motion, 'the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.'" *J.D. Fields & Co. v. Shoring Engineers*, 391 F. Supp. 3d 698, 702 (S.D. Tex. 2019) (quoting *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007)). But the court can "look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Id.* (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)).

5

### III.    Analysis

The contract contains a lengthy arbitration clause, which states that:

(1)  with some exceptions not relevant here, "any and all claims between Tenant and Landlord will be resolved in binding arbitration rather than in court" unless the Tenant submitted an arbitration waiver opt-out, (Docket Entry No. 1-1 at 33–34);

(2)  a "claim" is defined as "any dispute, claim or controversy" between the parties "relating to this Agreement, including, but not limited to, any contract, tort, statutory, or equity claims, but expressly excluding Landlord's claims relating to summary proceedings for eviction or possession of the Property," (*id.* at 34);

(3)  "the enforceability of [the arbitration clause] will be governed, construed, and enforced, both procedurally and substantively, by the Federal Arbitration Act," (*id.*); and

(4)  any arbitration will take place in New York, New York, under the American Arbitration Association's Commercial Arbitration Rules, (*id.*).

Under Texas law, "one who signs a contract is deemed to know and understand its contents and is bound by its terms" unless consent was induced by "fraud, misrepresentation, or deceit." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015).  Jackson signed the contract containing the arbitration clause.  (Docket Entry No. 1-1 at 6).  Jackson asserts that, even if there is a valid contract with an arbitration clause that covers the parties' disputes, the arbitration clause is unenforceable because it violates the Truth-In-Lending Act, 15 U.S.C. § 1601 *et seq*, and it is unconscionable.  (Docket Entry No. 13 at 6–17).  Jackson has the burden of establishing those defenses.  *Lopez*, 467 S.W.3d at 500.

### A.    The Truth-In-Lending Act

Jackson asserts that her contract with EK Real Estate is subject to the Truth-In-Lending Act, 15 U.S.C. § 1639c(e)(1), which states that:

[n]o residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

6

The implementing regulations prohibit a "contract or other agreement for a consumer credit transaction secured by a dwelling" from "includ[ing] terms that require arbitration . . . to resolve any controversy or settle any claims arising out of the transaction." 12 C.F.R. § 1026.36(h)(1). A consumer-credit transaction is "one in which (1) the party to whom credit is offered or extended is a natural person, and (2) the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Williams v. Cmty. Bank, Ellisville*, 821 F. App'x 292, 298 (5th Cir. 2020) (quoting 15 U.S.C. § 1602(i)).

At the March 17, 2021, initial conference, the court ordered the parties to cite any additional cases on the applicability of the Truth-In-Lending Act. (Docket Entry No. 20). EK Real Estate cited *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202 (D.N.M. 2020). In that case, the plaintiff purchased and financed a manufactured home from the defendants in one transaction, and later revoked his purchase of the home due to alleged defects. *Id.* at 1205–06. In a subsequent lawsuit, the defendants sought to compel arbitration of the plaintiff's claims. The plaintiff asserted that his claims arose from his rescission of a consumer-credit transaction and that the Truth-In-Lending Act's prohibition on arbitration applied. *Id.* at 1208–09. The court concluded that § 1639c(e)(1)'s "preclusion of arbitration for claims 'arising out of the transaction' is limited to disputes concerning the credit transaction" and does not extend "more broadly . . . to a sales transaction that occurs at the same time the loan is executed and for which the subject of the sale is the collateral for the loan." *Id.* at 1209. Because the plaintiff's claims arose from the sale transaction, and not the credit transaction, the court held that the Truth-In-Lending Act did not apply. *Id.* at 1209–10.

Jackson cited *Johnson v. Novastar Mortg., Inc.*, 698 F. Supp. 2d 463 (D.N.J. 2010). In that case, a plaintiff entered two sale-leaseback transactions, in which she conveyed title to her home in exchange for loans based on the equity she had in the home. (*Id.* at 465–66). After the plaintiff

7

fell behind on her monthly payments, the defendants evicted her.  The plaintiff sued, seeking rescission of the second transaction based on the defendants' violations of the Truth-In-Lending Act.  *Id.* at 466.  One defendant moved to dismiss under Rules 12(b)(1) and 12(b)(6), asserting that the plaintiff lacked standing because she was not entitled to relief under that Act.  *Id.* at 468.  The court determined that the plaintiff was a "consumer" under the Truth-In-Lending Act, and had standing, because the transactions created equitable mortgages under state law, which were consumer-credit business transactions under the Act.  *Id.* at 468–71.

This case is more like *Johnson* than *CMH Homes*.  The plaintiff in *Johnson*, like Jackson, entered into a sale-leaseback transaction in which she conveyed title to her home in exchange for a loan, stayed in the home, and made monthly payments on the loan.  Like Jackson, the plaintiff in *Johnson* fell behind on her monthly payments, was threatened with eviction, and sought to undo the transaction.  The plaintiff in *CMH Homes* purchased and financed a home in a single transaction and then sought to revoke the purchase due to alleged defects with the home.  The transaction at issue in this case was not a purchase of a home, or the financing of a home.  The transaction is like the sale-leaseback agreements in *Johnson*.  *Johnson*'s reasoning is applied here.

Under Texas law, "whether an instrument written as a deed is actually a deed or is in fact a mortgage is a question of fact."  *Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987) (citations omitted); *see Nelson v. Pasol*, No. 13-15-00379-CV, 2017 WL 3634059, at *3 (Tex. App.—Corpus Christi Aug. 24, 2017, no pet.) (discussing *Johnson*).  "The true nature of the instrument is resolved by ascertaining the intent of the parties as disclosed by the contract or attending circumstances or both."  *Johnson*, 726 S.W.2d at 6.  "Even when the instrument appears on its face to be a deed absolute, parol evidence is admissible to show that the parties actually intended the instrument as a mortgage."  *Id.*  The Texas Supreme Court has instructed that:

[t]he testimony of the parties about their intentions regarding the nature of the transaction plus other evidence adduced from the circumstances surrounding the transaction[, including] an option to repurchase, depressed sale price, and the parties' conversations with other witnesses, are relevant in ascertaining the true meaning the parties attributed to the contract.

*Id.* at 7.

The facts that Jackson alleges support finding that the transaction between her and EK Real Estate was a mortgage.  In her declaration, Jackson states that she understood the transaction to be a loan, not a sale of her home or transfer of her title and interest.  (Docket Entry No. 14 at 1–2).  Jackson and Lee submitted an application and income information, and EK Real Estate and EasyKnock determined that, despite their low income, the home equity was large.  The contract gave Jackson the option to repurchase her property for $69,648, nearly 40% more than the $50,069.79 she received, but the property was valued at $227,000, over four times the amount that she received.  (*Id.*; Docket Entry No. 11-3 at 6).

The sale-leaseback transaction is a mortgage under Texas law.  EK Real Estate extended the mortgage loan to Jackson for personal, family, and household purposes.  The loan was based on the equity in Jackson's home.  Because the transaction required Jackson to convey title in advance of a default in payment, and to forfeit the ability to have title reconveyed until all payments had been timely made, the effect was to have the home secure the loan.  The effect of the contract between Jackson and EK Real Estate is what the Truth-In-Lending Act intended to preclude from arbitration.  The contract is subject to the Truth-In-Lending Act, and its arbitration clause is unenforceable.

**B.    Unconscionability**

Even if the Truth-In-Lending Act does not apply, Jackson asserts that the arbitration clause is unconscionable.  "'Unconscionability' has no precise legal definition because it is not a concept

but a determination made in light of a variety of factors." *Carrillo v. ROICOM USA, LLC*, --- F. Supp. 3d ---, 2020 WL 5517200, at *7 (W.D. Tex. Sept. 14, 2020) (quoting *Delfingen US-Tex., L.P., v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet)). "Arbitration agreements may be either substantively or procedurally unconscionable, or both." *Lopez,* 467 S.W.3d at 499. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Id.* (quoting *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex. 2006)). "An arbitration agreement is unenforceable if it is procedurally unconscionable, substantively unconscionable, or both." *Id.* at 502.

### 1.    Procedural Unconscionability

When evaluating a claim of procedural unconscionability, courts consider several factors:

> (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable.

*Delfingen*, 407 S.W.3d at 798; *see Carrillo*, --- F.3d ---, 2020 WL 5517200, at *7–18 (applying factors). "[T]o find an agreement procedurally unconscionable," the "circumstances surrounding the negotiations must be shocking." *Carrillo*, --- F.3d ---, 2020 WL 5517200, at *8 (citing *Delfingen*, 407 S.W.3d. at 798).

Jackson asserts that, when she signed the deed and contract with EK Real Estate, she had no alternatives. In her declaration, Jackson stated that, when she encountered financial difficulties in 2018, she was unable to borrow money from a bank or mortgage company because she had bad credit and because Texas law prohibited her from mortgaging her homestead. (Docket Entry No. 14 at 1; Docket Entry No. 13 at 3). Jackson informed EK Real Estate of her financial situation and her income before she signed the documents. (Docket Entry No. 14).

Jackson also asserts that the transaction violated Texas public policy because it was an impermissible loan against her homestead.  (Docket Entry No. 13 at 8).  The homestead was valued at $227,000 and was not subject to a mortgage.  (Docket Entry No. 1-2 at 3).  Jackson received a little over $50,000.  The loan "charged" her $133,668 as a "Tenant Lease Option" fee, which Jackson asserts was the remainder of her equity in the homestead.  Jackson was to make payments that EK Real Estate knew were more than she could afford, because EK Real Estate told Jackson to include Lee's disability income check, his only income, in her application.

Jackson also asserts several grounds for finding the arbitration clause oppressive and unreasonable.  First, the instructions for how to opt-out of the arbitration clause were "buried" on page 16 of the contract.  Second, the clause requires any arbitration to occur in New York.  Third, any arbitration must follow the Commercial Arbitration Rules, and not the Consumer Arbitration Rules, substantially increasing the costs for Jackson.  For example, the filing fee for Jackson's claims would be $12,325 under the Commercial Arbitration Rules and $200 under the Consumer Arbitration Rules.  (Docket Entry No. 13 at 9 n.12).   Finally, Jackson argues that applying New York procedural law, as the arbitration clause requires, could limit her claims and recovery.

Although not all of Jackson's arguments are persuasive, the "totality of the circumstances . . . at the time the contract" was formed demonstrate both procedural abuse and unconscionability. *Delfingen*, 407 S.W.3d at 798.  EK Real Estate knew that Jackson was unsophisticated, without counsel, desperate for money, and, most significantly, that she could not afford the monthly payments the contract required.  EK Real Estate instructed Jackson to include Lee's disability income, despite Lee's lack of interest in the property or legal relationship to Jackson, and despite the fact that this was Lee's only income and he could not afford to make the payments.  Finally, although Jackson is presumed to have read and understood the contract, the arbitration clause's

11

use of the Commercial Arbitration Rules was unreasonable.  EK Real Estate knew that Jackson's total income in 2018 was $6,176.25.  Requiring Jackson to submit to the more costly arbitration under the commercial rules, despite knowing that those rules would make arbitration essentially unavailable to her, was oppressive.  The arbitration clause is procedurally unconscionable.

### 2.    Substantive Unconscionability

"Substantive unconscionability refers to the fairness of the arbitration provision itself." *Lopez*, 467 S.W.3d. at 499.  The "substantive abuse must be sufficiently shocking or gross to compel the court to intercede." *Delfingen*, 407 S.W.3d at 798.  An arbitration agreement may be substantively unconscionable "if the existence of large arbitration costs could preclude a litigant from vindicating statutory rights at arbitration." *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004)); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000) ("large arbitration costs could preclude a litigant . . . from effectively vindicating [her] rights in the arbitral forum.").  "A party seeking to invalidate an arbitration agreement bears the burden of showing the likelihood of incurring such prohibitive costs." *Micheletti*, 213 F. Supp. 3d at 848 (citing *Randolph*, 531 U.S. at 91).

Jackson has met her burden of establishing that arbitrating as the arbitration clause required would be prohibitively expensive.  Under the Commercial Arbitration Rules, Jackson's filing fee is twice her 2018 income and 43% of her current income.  (Docket Entry No. 13 at 9 n.12; Docket Entry No. 14 at 2).  Unlike the Consumer Arbitration Rules, there is no limit on the daily cost of an arbitrator.  (Docket Entry No. 13 at 12 n.15).  Having the commercial rules apply in this case makes the arbitration clause prohibitively expensive and substantively unconscionable.

IV.     **Conclusion**

The arbitration clause is unenforceable because it violates the Truth-In-Lending Act and is procedurally and substantively unconscionable.  EK Real Estate's motion to compel arbitration and to dismiss or stay this case, (Docket Entry No. 11), is denied.

SIGNED on March 26, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge